[No. S028697. Dec. 20, 1993.]

In re JOVAN B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOVAN B., Defendant and Appellant.

802

**COUNSEL**

Bradley A. Bristow, under appointment by the Supreme Court, and Patricia A. Wynne, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BAXTER, J.—Section 12022.1 of the Penal Code increases the period of imprisonment for a felony if the offender committed it while free on bail or his own recognizance (O.R.) pending resolution of earlier felony charges of which he is ultimately found guilty. We granted review to decide whether this "bail/O.R." enhancement applies in juvenile court proceedings under section 602 of the Welfare and Institutions Code so as to extend the maximum period of "physical confinement" of a juvenile ward. (See Welf. & Inst. Code, §§ 726, 731, 1766, subd. (b).) Unlike the Court of Appeal, we conclude that section 12022.1 is applicable in the juvenile context. We will therefore reverse in part the judgment of the Court of Appeal.

### FACTS

On July 1, 1991, the Madera County District Attorney filed a juvenile court petition alleging that Jovan B., a minor then four weeks shy of his fifteenth birthday (hereafter the minor), came within the provisions of Welfare and Institutions Code section 602[1] because he had committed a felony, residential burglary. (Pen. Code, §§ 459, 460, subd. (a).) At a detention hearing on July 2, the court ordered the minor released pending trial under "[h]ouse arrest/electronic monitoring."

A contested jurisdictional hearing occurred on August 9, 1991. The court sustained the petition. (The record includes no transcript of the August 9 hearing. The probation report indicates that the minor entered the home of a friend, Benjamin S., and stole Benjamin's Los Angeles Raiders jacket.)

The same day, August 9, a second Welfare and Institutions Code section 602 petition was filed alleging that in violation of Penal Code section 140, the minor had threatened Benjamin for assisting the authorities in the burglary case. On August 12, the court ordered the minor detained in juvenile hall pending adjudication of this new petition.

On August 26, the court held a dispositional hearing on the burglary petition and a jurisdictional hearing on the petition alleging threats against a

[1]Section 602 brings any minor who commits a crime within the jurisdiction of the juvenile court, "which may adjudge such person to be a ward of the court."

witness. Without objection, the latter petition was amended to assert, under Penal Code section 12022.1, that the threats against Benjamin occurred while the minor was out of custody pending trial on the burglary.

Evidence at the hearing indicated that on August 7, 1991, the minor and another juvenile, Anthony O., who was also accused in the burglary, approached Benjamin, who was scheduled to testify at the trial of that matter. Anthony extended a wooden dowel toward Benjamin and said, "Fuck you, bitch." Both the minor and Anthony then declared they would "kick [Benjamin's] . . . ass." The minor later told a responding officer he was going back to get Benjamin for opening his mouth about a jacket in the minor's possession; the minor said he had gotten into trouble about the jacket.

At the conclusion of proceedings on August 26, the court found true both the Penal Code section 140 violation and the bail/O.R. allegation under Penal Code section 12022.1. The matter was set for later disposition. Meanwhile, in the burglary case, the court declared the minor a court ward. It placed him on probation with conditions, including a 30-day commitment to juvenile hall (including 21 days already served), 30 days' "house arrest" with "electronic surveillance," and a $100 restitution fine.

On September 19, the court entered a dispositional order in the witness-threatening matter. It deemed the violation of Penal Code section 140 a felony[2] and confirmed the "special allegation per [Penal Code section] 12022.1." The court continued the minor as a court ward, ordered an additional 30 days of juvenile hall confinement with credits, again imposed 30 days of electronically monitored house arrest, and specified another $100 restitution fine.

The minor appealed the August 26 jurisdictional order and the September 19 dispositional order. He urged that the sentence enhancement provided by Penal Code section 12022.1 for crimes committed while on bail or O.R. is inapplicable to juvenile proceedings because the statute speaks exclusively in adult terms of conviction, sentencing, and prison. The Court of Appeal agreed. It reversed the section 12022.1 finding and remanded for appropriate modification of the September 19 order. In all other respects, the judgment was affirmed. We granted the People's petition for review.

## DISCUSSION

Penal Code section 12022.1 is part of the Determinate Sentencing Act (DSA) applicable to adult offenders. The statute provides that if one

---

[2]In adult criminal proceedings, a violation of section 140 is punishable either by a county jail sentence not exceeding one year, or by two, three, or four years in state prison. Hence, it is a "wobbler," either a felony or a misdemeanor, depending on whether jail or prison time is imposed. (Pen. Code, § 17.)

commits a felony while released on bail or O.R. pending final resolution of an earlier felony charge, he shall serve "two years in state prison" additional and consecutive to any other prison term imposed for either offense. If he is "convicted" and "sentenced" for the later offense before "conviction" for the earlier offense occurs, imposition of the enhancement shall be stayed. The stay shall be lifted by the court hearing the earlier offense at the time of sentencing in that case. If the defendant is acquitted of the earlier offense, the stay becomes permanent. ■ Thus, the enhancement cannot be imposed unless the defendant is ultimately "convicted" of both offenses. (See *People* v. *McClanahan* (1992) 3 Cal.4th 860, 869 [12 Cal.Rptr.2d 719, 838 P.2d 241].)[3]

■ Juvenile courts have broader dispositional discretion over offenders within their jurisdiction than do adult courts directly subject to the DSA. (See Welf. & Inst. Code, § 725 et seq.) The DSA nonetheless has indirect application in juvenile proceedings. Whenever the juvenile court orders a

---

[3]Penal Code section 12022.1 provides:

"(a) For the purposes of this section only:

"(1) 'Primary offense' means a felony offense for which a person has been released from custody on bail or on his or her own recognizance prior to the judgment becoming final, including the disposition of any appeal, or for which release on bail or his or her own recognizance has been revoked.

"(2) 'Secondary offense' means a felony offense alleged to have been committed while the person is released from custody for a primary offense.

"(b) Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court.

"(c) The enhancement allegation provided in subdivision (b) shall be pleaded in the information or indictment which alleges the secondary offense and shall be proved as provided by law. The enhancement allegation may be pleaded in a complaint but need not be proved at the preliminary hearing for the secondary offense.

"(d) Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary offense at the time of sentencing for that offense and shall be recorded in the abstract of judgment. If the person is acquitted of the primary offense the stay shall be permanent.

"(e) If the person is convicted of a felony for the primary offense, is sentenced to state prison for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be consecutive to the primary sentence.

"(f) If the person is convicted of a felony for the primary offense, is granted probation for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be enhanced as provided in subdivision (b).

"(g) If the primary offense conviction is reversed on appeal, the enhancement shall be suspended pending retrial of that felony. Upon retrial and reconviction, the enhancement shall be reimposed. If the person is no longer in custody for the secondary offense upon reconviction of the primary offense, the court may, at its discretion, reimpose the enhancement and order him or her recommitted to custody."

ward confined apart from his parent or guardian, or commits him to the California Youth Authority (CYA), the order must specify that he "may not be held . . . for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (Welf. & Inst. Code, § 726; see *id.*, §§ 731, 1766, subd. (b).) For a *single* felony offense, this theoretical " 'maximum term of imprisonment' " is the longest adult term for that offense, as described in Penal Code section 1170, subdivision (a)(2), "plus enhancements which must be proven if pled." (Welf. & Inst. Code, § 726, 3d par.)

Moreover, the juvenile court may aggregate the period of physical or CYA confinement for *multiple* felony counts or petitions, including previously sustained petitions. In such cases, "the 'maximum term of imprisonment' shall be specified in accordance with subdivision (a) of Section 1170.1 of the Penal Code." (Welf. & Inst. Code, § 726, 4th par.) Among other things, Penal Code section 1170.1, subd. (a) directs how enhancements shall be included in the "aggregate term of imprisonment" of an adult offender sentenced to consecutive terms for multiple felonies.

■■ So far, the bail/O.R. enhancement has had no actual effect on the disposition of this case. However, the enhancement could have future significance in at least two circumstances.

First, even though the minor is not now confined for his offenses to date, further transgressions could result in a supplemental petition under Welfare and Institutions Code section 777 seeking modification of the current disposition on grounds that it "has not been effective in the rehabilitation or protection of the minor." If the court sustains such a petition and decides further confinement or CYA commitment is then warranted, the enhancement will be included in the statutory maximum period of such confinement or commitment.[4]

Second, the enhancement will also count toward the maximum period of confinement or commitment in a future section 602 proceeding if the court

---

[4] In November 1991, the minor admitted the truth of a Welfare and Institutions Code section 777 petition alleging that he had committed petty theft. The court continued the minor as a ward and imposed an additional 20 days in juvenile hall. For the first time, the court also "specified" the maximum term of confinement for the offenses to date. (See Welf. & Inst. Code, § 726, 2d par.) The period calculated by the court was eight years, two months. As the Attorney General observes, however, this calculation appears erroneous. Assuming the Penal Code section 12022.1 enhancement applies, the maximum term under section 726 and Penal Code section 1170.1, subdivision (a) is nine years, six months: the six-year upper term for residential burglary (Pen. Code, § 461, 1st par.), plus one-third of the three-year middle term for threatening a witness (Pen. Code, § 140), plus the two-year bail/O.R. enhancement (Pen. Code, § 12022.1), plus six months for the petty theft (Pen. Code, § 490).

then elects to "aggregate" the minor's current and subsequent offenses. (See discussion, *ante*, at p. 810.)[5]

If the minor were committed to CYA in either instance, his actual term, within the statutory maximum, would be governed by CYA guidelines. ■ Minors most often do not serve their maximum terms, but the statutory maximum may affect both parole eligibility and the extent to which actual confinement may be prolonged for disciplinary reasons. (See Cal. Code Regs., tit. 15, §§ 4945(i)(8), (11), (14), 4955(b), 4961(c), 4983.)

■ The Court of Appeal concluded that by its plain terms, the bail/O.R. enhancement statute cannot apply toward a juvenile ward's maximum confinement or commitment because the statute speaks in terms of "information[s]," "indictment[s]," "complaint[s]," "preliminary hearing[s]," and "sentencing," all of which are foreign to juvenile procedure. In particular, the Court of Appeal noted, the enhancement requires "conviction" of both the "bailed" and "while-on-bail" offenses. (See Pen. Code, § 12022.1, subds. (d)-(g).) The court reasoned that because "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose . . ." (Welf. & Inst. Code, § 203), a juvenile offender cannot meet the criteria for application of the enhancement.

The minor presses similar arguments here, but we conclude they lack merit. The approach taken by the minor and the Court of Appeal overlooks the plain language of another statute, Welfare and Institutions Code section 726, which provides that a juvenile ward's maximum confinement or commitment shall be a time *equal to* "the maximum term of *imprisonment* which could be imposed upon an *adult convicted* of the [same] offense or offenses . . . ." (Italics added.) Hence, for this limited juvenile purpose, the minor's current and prior juvenile records are to be treated *as if* they were compiled in an adult context.

The DSA provides in detail for the enhancement of adult sentences when specified circumstances of an offense, or of the offender's record, suggest that a longer period of confinement is warranted. Welfare and Institutions Code section 726 expressly adopts this system of enhancements for purposes of computing a juvenile ward's maximum confinement or commitment.

[5]New wardship petitions may be filed against the minor for crimes committed before July 29, 1994, when he turns 18. (See Welf. & Inst. Code, § 602.) If permitted by the "maximum term of imprisonment" for his offenses, the minor could conceivably be retained in CYA confinement under juvenile court auspices for as long as 2 years after his 25th birthday (Welf. & Inst. Code, §§ 607, subds. (b) & (c), 1769), and even non-CYA confinement could conceivably continue until age 25 (*id.*, Welf. & Inst. Code, § 607, subd. (d)). The minor will turn 25 on July 29, 2001, and will turn 27 on July 29, 2003.

Thus, paragraph three of Welfare and Institutions Code section 726 defines a ward's maximum confinement or commitment on a single count as the upper DSA term for the offense as set forth in Penal Code section 1170, subdivision (a)(2), "plus enhancements which must be proven if pled." The inference is that *any* enhancement which would apply to an adult conviction may likewise be applied, if pled and proven, in the juvenile setting.

Paragraph four of Welfare and Institutions Code section 726 further provides that the maximum confinement or commitment of a juvenile ward for "aggregated" offenses shall be computed under the formula for consecutive adult sentences set forth in Penal Code section 1170.1, subdivision (a). Section 1170.1, subdivision (a) provides, in turn, that the "aggregate term of imprisonment" in such cases shall be the sum of the "principal term" (the greatest term imposed for any of the offenses, plus specified enhancements applicable to the principal offense), the "subordinate term" (the sum of one-third the middle terms for each other offense on which the court is sentencing consecutively, plus one-third of specified enhancements applicable to each such subordinate offense which is a "violent felony"), *and* "any additional term[s] imposed pursuant to [Penal Code] [s]ection[s] 667, 667.5, 667.6, *or 12022.1* [the bail/O.R. enhancement] . . . ." (Italics added.)[6]

Of course, juvenile proceedings do not literally result in "convictions" and juvenile confinements are not "sentences," but that cannot be dispositive of the question whether the bail/O.R. enhancement applies to juvenile wards. Because they were enacted in an adult context, *all* felony sentence enhancements set forth in the DSA are defined in terms of "conviction" and "sentence" or "punishment" for an underlying offense. If use of this adult terminology were enough to prevent these enhancements from applying to juvenile wardship matters, paragraphs three and four of Welfare and Institutions Code section 726 would be meaningless.

For example, Penal Code section 1170.1, subdivision (a), as applied to juvenile proceedings by paragraph four of Welfare and Institutions Code section 726, provides that the "aggregate term of imprisonment" for multiple offenses may include enhancements, among others, for kidnapping the victim of a sex felony (Pen. Code, § 667.8), kidnapping a child with intent to permanently deprive a parent or guardian of custody (*id.*, § 667.85), carrying a firearm or using a dangerous or deadly weapon (*id.*, § 12022), carrying penetrating ammunition or wearing a body vest (*id.*, § 12022.2), carrying or

---

[6]Thus, not only is the bail/O.R. enhancement expressly included in the aggregate-sentence formula to which Welfare and Institutions Code section 726 refers; it is among the few considered so serious that it must apply in full to a consecutive sentence even when attached to a subordinate offense.

using a firearm in a sex offense (*id.*, § 12022.3), offering or furnishing a firearm to a coprincipal (*id.*, § 12022.4), personally using a firearm or assault weapon (*id.*, § 12022.5), discharging a firearm from a motor vehicle with the intent or effect of causing death or great bodily injury (GBI) (*id.*, § 12022.55), intentionally taking, damaging, or destroying property (*id.*, § 12022.6), intentionally inflicting GBI (*id.*, § 12022.7), administering an involuntary drug to facilitate a felony (*id.*, § 12022.75), inflicting GBI in the commission of certain forcible sex felonies (*id.*, § 12022.8), and causing a miscarriage through intentional injuring of a pregnant woman (*id.*, § 12022.9). Without exception, each of these enhancements provides that it is to be imposed "upon conviction" of the underlying felony, or consecutive to any punishment prescribed for the underlying felony "of which [one] . . . has been convicted."[7]

Welfare and Institutions Code section 726 obviously intends that, for purposes of calculating a juvenile ward's maximum confinement or commitment, the DSA's enhancement scheme should be applied fully except insofar as the focus of a particular enhancement is manifestly at odds with the principles of juvenile law. This requires a close analysis of each disputed enhancement to determine whether its internal references to adult criminal procedures indicate a purpose manifestly inconsistent with juvenile application.

We recently explained the purpose of the bail/O.R. enhancement. It is intended " ' "to meet public concern over offenders who are *arrested* [and] then allowed back on the street a short time later to commit more crimes," ' " " ' 'to deter the commission of new felonies by persons *released from custody* on an earlier felony,' " and to recognize such an offender's " '*breach* of the terms of his *special custodial status* . . . .' " (*People* v. *McClanahan, supra*, 3 Cal.4th 860, 867-871, italics added.)

These concerns apply equally to juvenile and adult offenses. Moreover, Penal Code section 12022.1's use of adult procedural terms such as "conviction" does not evidence an intent manifestly incompatible with its application to juvenile offenses. As we have seen, all DSA enhancements expressly assume the offender has been "convicted" of the offense for which punishment is being enhanced. That fact alone cannot override the express command of Welfare and Institutions Code section 726 that DSA enhancements be applied to maximum juvenile confinement.

---

[7] Court of Appeal decisions have assumed that the enhancements for drive-by shooting with actual or intentional death or GBI (Pen. Code, § 12022.55), and for personal use of a firearm (*id.*, § 12022.5), apply in juvenile cases. (*In re Sergio R.* (1991) 228 Cal.App.3d 588, 598-602 [279 Cal.Rptr. 149]; *In re Antonio R.* (1990) 226 Cal.App.3d 476, 479 [275 Cal.Rptr. 442].)

Nor is it dispositive that Penal Code section 12022.1 also requires "conviction" of the charge which led to the offender's release on bail or O.R. Even in this context, the word "conviction" appears to have no special technical significance for the enhancement and seems attributable simply to the adult terminology employed throughout the DSA enhancement scheme. The bail/O.R. enhancement is not "aimed primarily" at convictions as such, nor does it focus on the offender's status as a "convicted" person. (See *People* v. *Prather* (1990) 50 Cal.3d 428, 440 [267 Cal.Rptr. 605, 787 P.2d 1012]; cf. *People* v. *Jones* (1993) 5 Cal.4th 1142, 1148 [22 Cal.Rptr.2d 753, 857 P.2d 1163], and *People* v. *McClanahan, supra*, 3 Cal.4th at p. 871.) Even when applied to adults, section 12022.1's requirement of "conviction" for the earlier "bailed" offense appears principally intended to establish with judicial certainty that the charges leading to release on bail or O.R. were valid. In other words, the Legislature has declined to apply the bail/O.R. enhancement to an offense unless a court has also sustained the charge on which the offender was released when he committed it.[8]

Under these circumstances, the purposes of Welfare and Institutions Code section 726 and Penal Code section 12022.1 are achieved by concluding that the enhancement may not be included in a juvenile ward's maximum confinement or commitment until both the "bailed" and the "while-on-bail" charges have been found true in appropriate juvenile proceedings. As so construed, section 12022.1's reference to "convictions" does not preclude the statute's application to the maximum term of confinement of a juvenile ward.[9]

The Court of Appeal also expressed concern that a juvenile is not entitled to bail, and is never released on his "own" recognizance, as specified

---

[8]The Court of Appeal concluded that under the pre-1985 version of Penal Code section 12022.1, "convictions" were even more clearly the "gravamen" of the enhancement. We disagree. Prior to 1985, the statute provided more simply that "[a]ny person convicted of a felony offense which was committed while that person was released from custody on bail or on his or her own recognizance pending trial on an earlier felony offense shall, upon conviction of the later . . . offense, be subject to a penalty enhancement . . . ." Then, as now, the focus of the enhancement was the *bail/O.R. status* of the offender at the time he committed the later felony, and the function of "convictions" was simply to ensure that both the "bailed" and "while-on-bail" charges were valid. As the Court of Appeal noted, the purpose of the 1985 amendments was to make clear that the enhancement could be imposed even if it was not charged until after the preliminary hearing in the later offense (thus removing § 12022.1 from the holding of *People* v. *Superior Court (Mendella)* (1983) 33 Cal.3d 754, 763 [191 Cal.Rptr. 1, 661 P.2d 1081]), and even if "conviction" for the earlier offense did not occur until after conviction and sentencing on the later offense (thus superseding *Panos* v. *Superior Court* (1984) 156 Cal.App.3d 626, 630 [203 Cal.Rptr. 115]).

[9]The minor cites two Court of Appeal decisions for the proposition that Penal Code section 12022.1's reference to convictions renders it inapplicable in juvenile proceedings. Both cases are distinguishable. *People* v. *West* (1984) 154 Cal.App.3d 100 [201 Cal.Rptr. 63] held that because a juvenile court adjudication is not a conviction, it cannot be a "prior serious felony

in Penal Code section 12022.1, but rather is freed, if at all, to the custody of a parent or guardian. However, we are convinced that for purposes of Welfare and Institutions Code section 726 and Penal Code section 12022.1, the minor's pretrial "house arrest" release in this case was the functional equivalent of O.R. release in an adult proceeding.

When the juvenile court is persuaded, pending proceedings under Welfare and Institutions Code section 602, that the youthful subject may flee, presents a danger, or violated a prior order, but has a fit home and does not require "24-hour secure [pretrial] detention," the court must order or continue his pretrial release "to his parent, guardian, or responsible relative on home supervision." The order may impose, modify, or extend conditions "on [the] . . . *minor*" (italics added), who must *personally* sign a written promise to obey. Violation of a condition permits the offender's placement in secure pretrial detention pending further court review. (Welf. & Inst. Code, §§ 628.1, 636.)

Like adult O.R. release, therefore, a juvenile's conditional "home supervision" release places substantial responsibility, faith, and trust in the released person himself. Though the decision to release a juvenile relies in part on the assumption that parents, guardians, or relatives will monitor his conduct, his defiant commission of a new felony while released on this "special custodial status" is a *personal* breach of the juvenile court's trust. It is exactly the kind of opportunistic recidivism which warrants enhanced punishment under section Penal Code 12022.1. We conclude that by committing a new felony while subject to "house arrest" release on an earlier charge, the minor brought himself within the terms of the bail/O.R. enhancement.

 The minor asserts another fundamental reason—one not raised below—why the bail/O.R. enhancement cannot apply to juveniles. As the minor observes, the bail/O.R. enhancement was added to the DSA in 1982, five years after Welfare and Institutions Code section 726 was last amended in 1977 to specify how the DSA would apply to juvenile confinement time.

conviction" (Pen. Code, § 667) for purposes of enhancing the sentence for a subsequent *adult* serious felony conviction. *In re Anthony R.* (1984) 154 Cal.App.3d 772 [201 Cal.Rptr. 299] held that because a juvenile petty theft adjudication is not a conviction, a minor's second adjudication in juvenile court for petty theft cannot be a violation of Penal Code section 666 (theft offense with prior conviction and incarceration for theft offense). Neither case dealt with the effect of Welfare and Institutions Code section 726 on the use of DSA enhancements to compute a juvenile's maximum confinement period. As previously noted, even though these enhancements uniformly speak in adult terms of conviction and sentencing, they are incorporated into the juvenile scheme, for a limited purpose, by the express language of Welfare and Institutions Code section 726 and Penal Code section 1170.1.

Moreover, the minor urges, the bail/O.R. enhancement is different in nature from the enhancements which were in effect in 1977. Hence, the minor contends, this case is governed by the maxim of statutory construction that "where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . . [Citations.]" (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1] [hereafter *Palermo*].)

We find the argument unpersuasive. There is a converse rule "that where the reference is general instead of specific, such as . . . to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . . [Citations.]" (*Palermo, supra*, 32 Cal.2d at p. 59.) Moreover, where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, "the determining factor will be . . . legislative intent . . . ." (*People* v. *Domagalski* (1989) 214 Cal.App.3d 1380, 1386 [263 Cal.Rptr. 249].)

We conclude that the "maximum term of imprisonment" described in Welfare and Institutions Code section 726 incorporates, to the extent therein indicated, the "system or body of laws" known as the DSA. We think it "evident" (*Domagalski, supra*, 214 Cal.App.3d at p. 1386) that the "maximum term of imprisonment," as defined in section 726, was intended to conform at all times to the adult determinate sentencing scheme then in existence, regardless of the nature and timing of any amendments to that scheme. We explain our reasoning in detail.[10]

Before 1976, both adult and juvenile felons were subject to indeterminate systems which gave courts or administrative agencies broad discretion to set

---

[10]Several modern decisions have applied the *Palermo* rule, but none have done so without regard to other indicia of legislative intent. For example, *In re Oluwa* (1989) 207 Cal.App.3d 439 [255 Cal.Rptr. 35] considered the effect of Penal Code section 190, as rewritten by the 1978 Briggs Initiative, on prison term custody credits added to the code in 1982. The 1978 initiative statute allowed reduction of the minimum prison term for second degree murder under "[t]he provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code." (Pen. Code, § 190, as added by Prop. 7 [initiative measure approved Nov. 7, 1978], § 2.) When the initiative was adopted, the Penal Code article at issue contained only three sections, which granted prisoners credits up to one-third their minimum terms. Citing *Palermo, supra*, the court in *Oluwa* concluded that further credits added to the article in 1982 could not be applied to second degree murderers. The *Oluwa* court stressed the legislative analysis accompanying the 1978 initiative, which advised voters that murderers sentenced to prison terms of 15 years to life "would have to serve a minimum of 10 years before becoming eligible for parole."(207 Cal.App.3d at p. 445.) Thus, the Court of Appeal reasoned, "the electorate clearly intended service of 10 calendar years by a second-degree

each individual term of confinement on the basis of various factors, including the circumstances of the offense and the offender's progress toward rehabilitation. The Adult Authority was at least obliged to set an adult felon's term within the prescribed range for his offense. (See, e.g., Comment, *Senate Bill 42—The End of the Indeterminate Sentence* (1977) 17 Santa Clara L.Rev. 133, 135-138.) On the other hand, juvenile felons, whether convicted in adult court or adjudged wards under the juvenile court law, had no such offense-based limit upon the time in which they might be confined. Once obtained, the juvenile court's wardship jurisdiction ended only when the offender reached 21 or 25 years of age. A CYA commitment, once imposed, could extend until those ages were attained, or a uniform minimum period of confinement was completed, whichever occurred later. (See Welf. & Inst. Code, §§ 607, 1769; *People* v. *Olivas* (1976) 17 Cal.3d 236, 240-242, & fns. 5, 6, 8 [131 Cal.Rptr. 55, 551 P.2d 375].)

In 1976, the Legislature replaced the prior adult sentencing scheme with a comprehensive new law, the DSA. This new scheme set a limited number of alternative prison terms of definite duration, usually an "upper," middle," and "lower" term, for each category of felony. It further provided for augmentation of a felon's prison term by specified periods if his individual offense involved one or more statutory enhancements.

murderer before parole consideration," and the Legislature could not alter that scheme without voter approval. (207 Cal.App.3d at p. 445.)

In *People* v. *Kirk* (1990) 217 Cal.App.3d 1488 [267 Cal.Rptr. 126], the Court of Appeal cited *Palermo* in holding that the special scheme for full consecutive sentencing of certain sex offenses (Pen. Code, § 667.6, subd. (c)), as adopted in 1980 to include the offenses described in Penal Code section 289, does not apply to noncoercive offenses added to section 289 since 1980. The *Kirk* court stressed that when the consecutive-sentence scheme was adopted, the statutes to which it referred included forcible or coercive crimes exclusively; only later was section 289 amended to create certain offenses, such as digital penetration of a victim under 14 and more than 10 years younger than the perpetrator, which do not require force or coercion. The overall legislative scheme for punishment of sex offenders, the court reasoned, supports the conclusion that the Legislature intended to subject only violent or coercive offenders to full consecutive sentencing, and that the failure to amend section 667.6, subdivision (c) to that effect was an oversight. (217 Cal.App.3d at pp. 1498-1500.)

In *People* v. *Domagalski, supra,* 214 Cal.App.3d 1380, the court, citing *Palermo,* held that Vehicle Code section 40307, as amended in 1970 to permit bail or O.R. release of a drunk-driving arrestee despite the unavailability of a magistrate, " 'as provided in subdivisions (a) through (f) of [Penal Code] section 853.6,' " does not incorporate 1982 amendments to Penal Code section 853.6, subdivision (e), which require a new arrest or citation if a misdemeanor prosecution is not begun within 25 days after the initial detention. Examining the legislative history of Vehicle Code section 40307, the court concluded that the 1970 amendment thereto was " 'simply intended to derive [for Vehicle Code misdemeanants] the "more generous" *release* provision of the Penal Code' " (italics added), not to incorporate subsequent Penal Code restrictions on *prosecution.* (214 Cal.App.3d at p. 1386.)

Here, as we will explain, we find compelling indicia that the Legislature intended a juvenile maximum confinement scheme which would remain permanently parallel to the DSA.

At the heart of the DSA were Penal Code sections 1170, subdivision (a)(2) and 1170.1, subdivision (a). Section 1170, subdivision (a)(2) stated the general rule that when sentencing a felon to prison, the court must impose either the upper, middle, or lower term provided for the offense at issue, plus "any other . . . additional term" required or permitted by law in the individual case. Section 1170.1, subdivision (a) explained in detail how consecutive sentences for multiple offenses, including specific enhancements, should be computed.

The year 1976 also produced two related developments in the law pertaining to juvenile offenders. First, in *People* v. *Olivas*, *supra*, 17 Cal.3d 236, we held that one convicted of a misdemeanor committed between the ages of 16 and 21 would be deprived of equal protection if held in CYA confinement for a period longer than the maximum jail term for the same offense. *Olivas* was narrowly concerned with the unequal treatment of *convicted misdemeanants* on the sole basis of youth, but it raised concerns that any inequalities between the *maximum* confinements of youthful and adult offenders might be constitutionally suspect.

Second, the 1976 Legislature amended Welfare and Institutions Code sections 726 and 731 in a manner which might satisfy such constitutional concerns. (See *In re Aaron N.* (1977) 70 Cal.App.3d 931, 937, 939 [139 Cal.Rptr. 258].) In deference to the different purposes of the laws governing adult and juvenile offenders, the Legislature did not create a determinate confinement scheme for juvenile wards like that applicable to adult felons through the DSA. However, the 1976 amendments did provide for the first time that any juvenile court order for an offender's physical confinement, or for his commitment to CYA, must expressly be limited in duration to the "*maximum* term of imprisonment" (italics added) for an adult convicted of the same offense or offenses. (Stats. 1976, ch. 1071, § 29, p. 4827; *id.*, § 30, p. 4829.)

The following year, 1977, the Legislature again amended Welfare and Institutions Code section 726 to define, for juvenile confinement purposes, the phrase "maximum term of [adult] imprisonment." (Stats. 1977, ch. 1238, § 1, p. 4158.) The amendment stated the flat basic rule that the "maximum term of imprisonment" is the "longest of the three time periods [i.e., the upper, middle, and lower DSA terms] set forth in [Penal Code section 1170, subdivision (a)(2)] . . . *plus enhancements* which must be proven if pled." (Italics added.) Moreover, under the amendment, the "maximum term of imprisonment" applicable to an "aggregate[d]" period of commitment or confinement for multiple offenses must be computed "in accordance with [Penal Code section 1170.1, subdivision (a)]." As we have seen, section 1170.1, subdivision (a) sets forth the DSA's basic scheme for consecutive adult felony sentences.

Thus, in the language of *Palermo, supra*, 32 Cal.2d 53, 58-59, Welfare and Institutions Code section 726's reference to Penal Code sections 1170, subdivision (a)(2) and 1170.1, subdivision (a) is not a "specific reference [to] the provisions of another statute," but rather is a "general" reference "to a system or body of laws." Penal Code sections 1170, subdivision (a)(2) and 1170.1, subdivision (a), the sections to which Welfare and Institutions Code section 726 refers, serve that systematic purpose in the DSA; they state the central, fundamental principles by which all DSA sentences are to be computed.

Indeed, Welfare and Institutions Code section 726 evidences a particular intent to apply the full, evolving DSA scheme of enhancements, not just time-specific portions thereof. As indicated above, paragraph three of section 726 states a broad general rule that the "maximum term of imprisonment" for juvenile confinement purposes includes "enhancements" if they are pled and proven. This sole direct reference to "enhancements" in section 726 is generic and makes no mention whatever of specific statutes. The inference is that DSA "enhancements" are fully incorporated in section 726 whenever they were adopted.[11]

The obvious purpose of the 1976 and 1977 amendments to Welfare and Institutions Code section 726 was "to treat adult and juvenile offenders on equal footing as far as the [maximum] duration of their incarceration is concerned" (*In re Aaron N., supra*, 70 Cal.App.3d 931, 939), whatever that period might be at the moment. The Legislature cannot have anticipated that in order to preserve this equality over time, it would be forced to amend section 726 each and every time it altered the DSA.

Sensing the absurdity of this absolutist view, the minor suggests he might apply the *Palermo* maxim only to those particular post-1977 DSA amendments which were probably "unforeseen" or "[un]anticipated" by the 1977 Legislature, or which make the DSA sentencing scheme "completely different" or impose "significantly more punishment." But the minor's difficulty in expressing a workable test illustrates the fundamental flaw in his approach. Surely the 1977 Legislature did not intend that subsequent lawmakers would have to worry whether each new DSA amendment was so

[11]The generic rule set forth in paragraph three of Welfare and Institutions Code section 726 governs our construction of paragraph four, which deals with the specific problem of aggregated offenses. Paragraph four makes no direct mention of enhancements; it simply incorporates the formula for consecutive adult sentences set forth in Penal Code section 1170.1, subdivision (a). Section 1170.1, subdivision (a), in turn, describes in detail how specified enhancements (including, since 1982, the bail/O.R. enhancement) shall apply to a consecutive sentence. Because paragraph three of Welfare and Institutions Code section 726 so clearly suggests that DSA "enhancements" are fully incorporated in the juvenile scheme, paragraph four cannot mean that the DSA'S formula for aggregate sentencing, and the enhancements included therein, were incorporated only as they existed in 1977.

significantly different from the 1977 scheme that a specific amendment to Welfare and Institutions Code section 726 was also necessary.

Finally, the principles the minor espouses would work in both directions. Thus, if, after 1977, the Legislature were to make the DSA substantially more *lenient*, in ways perhaps unforeseen, presumably Welfare and Institutions Code section 726 would also have to be amended to grant juveniles the benefit of the change.

This cannot have been the Legislature's intent. We conclude that the bail/O.R. enhancement applies to a juvenile ward, even though this enhancement was added to the DSA only *after* Welfare and Institutions Code section 726 was amended to incorporate the DSA as the basis for calculating a ward's maximum confinement.

## CONCLUSION

The Court of Appeal was mistaken in its conclusion that Penal Code section 12022.1, the bail/O.R. enhancement, does not apply in juvenile wardship matters. Accordingly, it was error to reverse that portion of the juvenile court's judgment which found true the allegation under section 12022.1, and to remand for dismissal of that allegation. To this extent, the judgment of the Court of Appeal is reversed with directions to affirm the judgment of the juvenile court in full. In all other respects, the Court of Appeal's judgment is affirmed.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and George, J., concurred.