[No. F045287. Fifth Dist. Apr. 1, 2005.]

In re CARLOS E., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CARLOS E., Defendant and Appellant.

1532

COUNSEL

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Kathleen A. McKenna and William Kim, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**VARTABEDIAN, J.**—In this matter of first impression, we determine whether Welfare and Institutions Code section 731 (further references are to this code unless stated otherwise), operative January 1, 2004, alters the method for determining the maximum term of confinement in the California Youth Authority (CYA). We find that, in light of the present language of section 731, the maximum term of a minor's confinement must be discretionarily determined by the juvenile court based on the facts and circumstances placing the minor before the court, not to exceed the maximum time prescribed by adult sentencing law.

## PROCEDURAL AND FACTUAL BACKGROUND

Minor Carlos E., the appellant, confronted the victim about a prior altercation. Minor stabbed the victim and then pushed him into a nearby canal. Minor fled.

The juvenile court adjudicated minor a ward of the court pursuant to section 602 after minor admitted a felony violation of Penal Code section 245, subdivision (a)(1), assault with a deadly weapon. The court committed minor to a juvenile detention center for 180 days and placed him on probation.

Subsequently, minor missed probation appointments, dropped out of school, failed to obey the directives of his guardian, and admitted using drugs. A section 777 supplemental petition alleged violation of probation. Minor admitted the allegations of the supplemental petition. On March 25, 2004, he was committed to CYA. The juvenile court set the maximum term of confinement at four years, based solely on the maximum term an adult would face.

## DISCUSSION

*Statutory History*

The California Supreme Court has provided this historical backdrop:

"Before 1976, both adult and juvenile felons were subject to indeterminate systems which gave courts or administrative agencies broad discretion to set each individual term of confinement on the basis of various factors, including the circumstances of the offense and the offender's progress toward rehabilitation. The Adult Authority was at least obliged to set an adult felon's term within the prescribed range for his offense. [Citation.] On the other hand, juvenile felons, whether convicted in adult court or adjudged wards under the juvenile court law, had no such offense-based limit upon the time in which they might be confined. Once obtained, the juvenile court's wardship jurisdiction ended only when the offender reached 21 or 25 years of age. A CYA commitment, once imposed, could extend until those ages were attained, or a uniform minimum period of confinement was completed, whichever occurred later. (See Welf. & Inst. Code, §§ 607, 1769; *People v. Olivas* (1976) 17 Cal.3d 236, 240–242, & fns. 5, 6, 8 [131 Cal.Rptr. 55, 551 P.2d 375].)

"In 1976, the Legislature replaced the prior adult sentencing scheme with a comprehensive new law, the DSA [Determinate Sentencing Act]. This new scheme set a limited number of alternative prison terms of definite duration, usually an 'upper,' 'middle,' and 'lower' term, for each category of felony. It further provided for augmentation of a felon's prison term by specified periods if his individual offense involved one or more statutory enhancements.

"At the heart of the DSA were Penal Code sections 1170, subdivision (a)(2) and 1170.1, subdivision (a). Section 1170, subdivision (a)(2) stated the general rule that when sentencing a felon to prison, the court must impose either the upper, middle, or lower term provided for the offense at issue, plus 'any other . . . additional term' required or permitted by law in the individual case. Section 1170.1, subdivision (a) explained in detail how consecutive sentences for multiple offenses, including specific enhancements, should be computed.

"The year 1976 also produced two related developments in the law pertaining to juvenile offenders. First, in *People v. Olivas, supra*, 17 Cal.3d 236, [the California Supreme Court] held that one convicted of a misdemeanor committed between the ages of 16 and 21 would be deprived of equal protection if held in CYA confinement for a period longer than the maximum jail term for the same offense. *Olivas* was narrowly concerned with the

unequal treatment of *convicted misdemeanants* on the sole basis of youth, but it raised concerns that any inequalities between the *maximum* confinements of youthful and adult offenders might be constitutionally suspect.

"Second, the 1976 Legislature amended Welfare and Institutions Code sections 726 and 731 in a manner which might satisfy such constitutional concerns. (See *In re Aaron N.* (1977) 70 Cal.App.3d 931, 937, 939 [139 Cal.Rptr. 258].) In deference to the different purposes of the laws governing adult and juvenile offenders, the Legislature did not create a determinate confinement scheme for juvenile wards like that applicable to adult felons through the DSA. However, the 1976 amendments did provide for the first time that any juvenile court order for an offender's physical confinement, or for his commitment to CYA, must expressly be limited in duration to the '*maximum* term of imprisonment' (italics added) for an adult convicted of the same offense or offenses. (Stats. 1976, ch. 1071, § 29, p. 4827; *id.*, § 30, p. 4829.)

"The following year, 1977, the Legislature again amended Welfare and Institutions Code section 726 to define, for juvenile confinement purposes, the phrase 'maximum term of [adult] imprisonment.' (Stats. 1977, ch. 1238, § 1, p. 4158.) The amendment stated the flat basic rule that the 'maximum term of imprisonment' is the 'longest of the three time periods [i.e., the upper, middle, and lower DSA terms] set forth in [Penal Code section 1170, subdivision (a)(2)] . . . *plus enhancements* which must be proven if pled.' (Italics added.) Moreover, under the amendment, the 'maximum term of imprisonment' applicable to an 'aggregate[d]' period of commitment or confinement for multiple offenses must be computed 'in accordance with [Penal Code section 1170.1, subdivision (a)].' [S]ection 1170.1, subdivision (a) sets forth the DSA's basic scheme for consecutive adult felony sentences." (*In re Jovan B.* (1993) 6 Cal.4th 801, 816–818 [25 Cal.Rptr.2d 428, 863 P.2d 673].)

"The obvious purpose of the 1976 and 1977 amendments to Welfare and Institutions Code section 726 was 'to treat adult and juvenile offenders on equal footing as far as the [maximum] duration of their incarceration is concerned.' [Citation.]" (*In re Jovan B., supra,* 6 Cal.4th at p. 819.)

An adult convicted of an offense cannot be committed to prison for the maximum determinate term without a finding of aggravating circumstances. On the other hand, a minor committing an identical offense found true by the juvenile court may be confined for the maximum term without any additional findings by the juvenile court without violating principles of equal protection. This is so because "[a]dults convicted in the criminal courts and sentenced to prison and youths adjudged wards of the juvenile courts and committed to the

Youth Authority are not 'similarly situated.' " (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].)

Once committed to CYA, the minor's actual term is governed by CYA guidelines, within the statutory maximum. "Minors most often do not serve their maximum terms, but the statutory maximum may affect both parole eligibility and the extent to which actual confinement may be prolonged for disciplinary reasons." (*In re Jovan B., supra,* 6 Cal.4th at p. 811.)

Section 726, subdivision (c) provides in pertinent part that "[i]f the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." This subdivision goes on to describe that the maximum term of confinement is to be determined pursuant to Penal Code section 1170, subdivision (a), but without regard to the provisions of subdivision (b) (requiring the consideration of mitigating and aggravating factors), and without regard to time for good behavior, etc. Subdivision (c) of section 726 goes on to define "physical confinement" to mean "placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority."

Section 731 pertains to commitments to CYA. Prior to January 1, 2004, the second paragraph of this section provided: "A minor committed to the Department of the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. Nothing in this section limits the power of the Youthful Offender Parole Board to retain the minor on parole status for the period permitted by Section 1769."

*Present Statute*

Senate Bill No. 459 (2003–2004 Reg. Sess.) amended section 731, operative January 1, 2004. The former two paragraphs were designated as subdivision (a) and subdivision (b). Changes, not pertinent to our discussion, were made to the first paragraph (subdivision (a)). The second paragraph was rewritten and became subdivision (b). What gives rise to the present issue concerns the addition of the second sentence in subdivision (b).

Section 731, subdivision (b), now reads: "A minor committed to the Department of the Youth Authority may not be held in physical confinement

for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. *A minor committed to the Department of the Youth Authority also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section.* This section does not limit the power of the Youth Authority Board to retain the minor on parole status for the period permitted by Section 1769." (§ 731, subd. (b), italics added.)

Minor here claims that the amendment to section 731, while retaining the rule that the maximum term of confinement in CYA may not exceed "the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court," now allows for the juvenile court to set a "maximum term of confinement" in CYA less than the maximum term for an adult based on a consideration of the facts and circumstances of the matter (or matters) that brought the minor before the juvenile court. He argues that the juvenile court failed to exercise this newly authorized power and imposed the adult maximum term of confinement without considering the particulars of the minor and the offense. He further contends that he was committed pursuant to a lack of informed discretion, thereby prejudicing his right to due process under the United States and California Constitutions.

The People argue that the amendment to section 731 merely clarifies existing juvenile court law and does not authorize the trial court to set a maximum term of confinement to CYA that is less than the adult maximum term of imprisonment.

"In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]" (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548].)

The People claim that the juvenile court judge has only two areas of discretion in setting the maximum term of confinement: (1) the judge may declare a wobbler offense to be a misdemeanor or a felony (§ 702), and (2) the judge may decide whether to aggregate terms when there are multiple counts or multiple petitions (§ 726, subd. (c)). Relying on the rule of statutory

construction that this court should avoid construing one section in a manner that renders another section superfluous or inoperative and the rule that this court should adopt a construction which avoids conflicts between different statutory provisions, the People argue that section 726 requires that the maximum term of confinement must always be the "longest term of imprisonment prescribed by law." The People contend that to allow the court to set a maximum term of confinement that is less than the maximum term of imprisonment for a similarly situated adult would nullify section 726.

■ We disagree. Section 726 requires that a court may not order that a minor be held in confinement "in excess of the maximum term of imprisonment which could be imposed upon an adult." Section 726 sets the upper limit for a term of confinement in all cases. Allowing a trial court to impose a maximum term of confinement below the "maximum term of imprisonment which could be imposed upon an adult" pursuant to section 731, subdivision (b) does not, as the People suggest, nullify the rule of section 726 because setting a minor's term somewhere below the maximum term of imprisonment for an adult does not violate section 726, subdivision (c), which sets the outer limit for a period of confinement.

We note the People have not offered any reason why the earlier version of section 731 needed clarification in this area, nor have we found any case law or other authorities raising an issue in this area that calls for clarification.

■ This court is required, to the extent possible, to avoid adopting an interpretation that renders words surplusage. (*People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].) We should, if possible, give the words their usual ordinary import and accord significance to every word or phrase in a statute. (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].)

■ Section 726 directs the juvenile court to determine the *maximum term of imprisonment* by choosing the longest period of incarceration applicable to an adult offender without regard to mitigating or aggravating circumstances. (§ 726 subd. (c).) Section 731 retains this requirement but "also" requires the court to particularly set a *maximum term of physical confinement* in CYA "based upon the facts and circumstance of the matter . . . which brought . . . the minor under the jurisdiction of the juvenile court." "Facts and circumstances of the matter" have absolutely no bearing on the question of the "maximum term of imprisonment" that is determined pursuant to section 726. Under respondent's interpretation, the juvenile court, although expressly directed to consider the facts and circumstances of the matter, would have no authority to impose anything but the maximum term of imprisonment, which is found without any consideration of individualized facts and circumstances.

We find that to adopt respondent's position would be to render the amendment to section 731 surplusage. This is a course we choose not to follow. Thus, the amendment to section 731 clearly sets forth a method based on the facts and circumstances before the court of determining the "maximum period of confinement" in CYA, while retaining the long-standing requirement that the term determined by the court may not exceed the "maximum period of imprisonment" as determined by section 726.

The amendment to section 731 does not nullify the requirements of section 726. As our historical discussion sets forth, the maximum-period-of-imprisonment requirement in section 726 was adopted to avoid equal protection concerns. These concerns remain and require the maximum time limitation rules contained in section 726.

Further evidence that the language added to section 731 is much more than a clarification of earlier law is found in the amendments to section 1766 made as part of the same legislation, Senate Bill No. 459 (2003–2004 Reg. Sess.). Section 1766, dealing with the powers of the Youth Authority Board (formerly the Youthful Offender Parole Board) when a minor has been committed to CYA, was substantially altered by Senate Bill No. 459. Of importance to our discussion is former subdivision (b), now contained in current subdivision (a)(2).

Former section 1766 provided in pertinent part:

"When a person has been committed to the Youth Authority, the Youthful Offender Parole Board may

"(a) Permit him his liberty under supervision and upon such conditions as it believes best designed for the protection of the public.

"(b) Order his or her confinement under such conditions as it believes best designed for the protection of the public, except that a person committed to the Youth Authority pursuant to Sections 731 or 1731.5 *may not be held in physical confinement for a total period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought the minor under the jurisdiction of the juvenile court*, or which resulted in the commitment of the young adult to the Youth Authority. Nothing in this subdivision limits the power of the board to retain the minor or the young adult on parole status for the period permitted by Sections 1769, 1770, and 1771." (Italics added.)

Section 1766, as amended by Senate Bill No. 459 (2003–2004 Reg. Sess.), provides in pertinent part:

"(a) When a person has been committed to the Department of the Youth Authority, the Youth Authority Board may, according to standardized review and appeal procedures established by the board in policy and regulation and subject to the powers and duties enumerated in subdivision (a) of Section 1719:

"(1) Permit the ward his or her liberty under supervision and upon conditions it believes are best designed for the protection of the public.

"(2) Order his or her confinement under conditions it believes best designed for the protection of the public pursuant to the purposes set forth in Section 1700, except that a person committed to the Youth Authority pursuant to Sections 731 or 1731.5 *may not be held in physical confinement for a total period of time in excess of the maximum periods of time set forth in Section 731.* Nothing in this subdivision limits the power of the board to retain the minor or the young adult on parole status for the period permitted by Sections 1769, 1770, and 1771." (Italics added.)

A comparison of the language from former section 1766 and current section 1766 illustrates the maximum confinement time in CYA has shifted from the "maximum period of imprisonment which could be imposed upon an adult" to the maximum confinement time set by the juvenile court pursuant to section 731, with the lid remaining consistent with the long-standing policy that minors may not be retained in CYA for a period in excess of the "maximum period of imprisonment which could be imposed upon an adult."

We also find that the People's position runs afoul of the rules regarding specific and general provisions on the same subject matter. " 'It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' " (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147].) This rule applies whether the specific statute was passed before or after the general statute. (*Warne v. Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377].)

■ Section 726, subdivision (c), deals with the maximum period of time any minor could be required to serve in a "juvenile hall, ranch, camp, forestry camp or secure juvenile home . . . , or in any institution operated by the Youth Authority." Section 731, subdivision (b), governs only minors committed to CYA based on a particular set of facts and circumstances. Thus section

731, subdivision (b), is a special statute dealing with the maximum confinement of a specific minor in CYA, whereas section 726, subdivision (c), is a general statute, describing the generalized limitations on the aggregate amount of time one might be required to serve at any of the described placement facilities, including confinement in CYA.

While the presumption that a specific statute governs a general statute may be rebutted by evidence of a contrary intent of the Legislature (*Miller v. Superior Court* (1999) 21 Cal.4th 883, 896 [89 Cal.Rptr.2d 834, 986 P.2d 170]), no such contrary intent appears here.

Because we find section 731 is not ambiguous, we need not resort to legislative history for our decision. We only note the history as confirmation of our conclusion as to the plain language of the statute. The stated rationale for the numerous changes created by Senate Bill No. 459 was, "Almost since the creation of a separate board in 1980, CYA observers have expressed serious concerns about the YOPB [Youthful Offender Parole Board], principally regarding the board's tendency to increase ward length-of-stay beyond the board's own guidelines, and the board's lack of program expertise." (Assem. Com. on Appropriations, Analysis of ; Sen. Bill No. 459 (2003–2004 Reg. Sess.) p. 3, <http://www.leginfo.ca.gov/pub/03-04/bill/sen/sb_0451-0500/sb_459_cfa_20030408_113928_asm_comm.html> [as of Apr. 1, 2005].) The Senate Rules Committee analysis states that current law provides that the maximum period of imprisonment is the term a similarly situated adult would receive, but this bill "would **additionally** provide that a 'minor committed to the Department of the Youth Authority also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court.' " (Senate Rules Com., Analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) p. 4, <http://www.leginfo.ca.gov/pub/03-04/bill/sen/sb_0451-0500/sb_459_cfa_20030404_130501_sen_floor.html> [as of Apr. 1, 2005], boldface added.) According to the author of the bill it contains "important checks and balances that will enhance the relationship between CYA and the counties, which will improve CYA correctional services." (Assem. Pub. Saf. Com., Analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) p. 3, <http://www.leginfo.ca.gov/pub/03-04/bill/sen/sb_0451-0500/sb_459_cfa_20030407_152701_asm_floor.html> [as of Apr. 1, 2005].)

Nor are we persuaded by the People's "the sky is falling" argument that allowing the juvenile court to set a maximum period of confinement for CYA commitments will "require the dismantlement of juvenile court law's indeterminate disposition scheme and alteration of its distinct purposes."

There is nothing in the legislation or its history to suggest the Legislature sought to make sweeping changes in the commitment of a minor to CYA from an indeterminate term to a determinate term, nor is there any provision that the Legislature is restricting the juvenile court to the adult sentencing triad. Proof the juvenile court's decision is not tied directly to the adult system is found in the language utilized; the juvenile court is to consider the facts and circumstances of the matter, rather than being restricted solely to the aggravating or mitigating circumstance scheme for adults. The juvenile court's determination must be tied to the purposes of the juvenile system, which include the protection of the public as well as the rehabilitation of the minor. (§ 202.)

"[I]t is important to keep in mind that the primary goal behind maintaining separate courts and procedures for adults and minors is to ensure that juvenile offenders who have not yet become hardened criminals receive treatment and rehabilitation. 'The juvenile court system and the adult criminal courts serve fundamentally different goals. The punishment for serious crimes tried in the criminal courts is imprisonment, and "the purpose of imprisonment for crime is punishment." (Pen. Code, § 1170, subd. (a)(1).) . . . [¶] In contrast, the juvenile court system seeks not only to protect the public safety, but also the youthful offender. . . . [E]ven for the most serious offenders—those who will be committed to the California Youth Authority—"community restoration, victim restoration, and offender training and treatment shall be substituted for retributive punishment and shall be directed toward the correction and rehabilitation of young persons who have committed public offenses." ' [Citation.]" (*In re Kasaundra D.* (2004) 121 Cal.App.4th 533, 539 [16 Cal.Rptr.3d 920].)

Under the changes to section 731, the juvenile court must determine the maximum period of confinement to CYA based on the facts and circumstances, this maximum may not be more than that for a comparable adult, but may be less. The maximum period of confinement set by the court is not a determinate term, it is the ceiling on the amount of time that a minor may be confined in CYA, and recognizes that the committing court has an interest in and particularized knowledge of the minors it commits to CYA. The Youth Authority Board retains the power, subject to the applicable rules and regulations, to determine the actual length of confinement at or below the ceiling set by the juvenile court and to determine the conditions of the minor's confinement. Thus, the indeterminate nature of the system remains in accordance with the distinct purposes of the juvenile system. We again emphasize that this change relates only to commitments to CYA.

To adopt the People's construction of the statute would fail to honor the plain reading of the statute, would involve misapplication of the canons of

statutory construction, and would require judicial trespass into the legislative province. We decline to do so.

■ Although minor couches his argument in terms of a failure of the juvenile court to exercise its discretion, section 731 unmistakably requires the trial court to set a maximum term of physical confinement in CYA based upon the facts and circumstances of the matter. The court must set the term in all cases where it is committing a minor to CYA and it must exercise its discretion in making the determination of what that term will be. The trial court here erred in its failure to set a maximum term of physical confinement in CYA based upon the facts and circumstances of the matter before it.

## DISPOSITION

The matter is remanded to the juvenile court for that court to set a maximum term of confinement in CYA based on the facts and circumstances that brought the minor before the juvenile court. In all other respects, the judgment is affirmed.

Ardaiz, P. J., and Dibiaso, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 22, 2005. Baxter, J., did not participate therein.