[No. H033462. Sixth Dist. June 3, 2009.]

In re H.D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
H.D., Defendant and Appellant.

**C**OUNSEL

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**O**PINION

**McADAMS, J.**—H.D., a minor, appeals from the dispositional order of the juvenile court committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (now Division of Juvenile Facilities (DJF)), for a maximum term of physical confinement of 12 years eight months, per the court's written orders. Defendant argues that the court's written orders do not correctly reflect the maximum term of confinement orally imposed by the court, and requests that this court reduce the maximum term by two years, to 10 years eight months. The Attorney General acknowledges that there is a discrepancy between the court's oral pronouncement and the written orders, but argues that the resulting ambiguity should be resolved by the trial court on remand. We will reverse the dispositional order and remand to the trial court for further proceedings on disposition.

### STATEMENT OF THE CASE

On July 8, 2008, a juvenile delinquency petition (Welf. & Inst. Code, § 602)[1] was filed in Santa Clara County Superior Court alleging that on June

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

11, 2008, the minor committed a robbery (count 1) and an aggravated assault (count 2). (Pen. Code, §§ 211–212.5, subd. (c), 245, subd. (a)(1).) The petition further alleged that during the assault, the minor personally inflicted great bodily injury, and that the assault was committed for the benefit of, at the direction of, and in association with, a criminal street gang. (Pen. Code, §§ 12022.7, subd. (a), 186.22, subd. (b)(1)(B).) On July 18, 2008, pursuant to a negotiated disposition, the district attorney amended the petition to allege that the robbery was also committed for the benefit of, at the direction of, and in association with, a criminal street gang, and dismissed the great bodily injury allegation made in connection with the assault charge. The minor then admitted all of the charges and allegations of the petition, and the court transferred the case to Santa Cruz County for disposition. Santa Cruz County accepted the transfer.

On September 2, 2008, the Santa Cruz County Superior Court declared the minor a ward of the court and committed him to the Division of Juvenile Justice (now DJF), orally setting the maximum time of physical confinement at 11 years eight months. The clerk's transcript reflects a maximum time of physical confinement of 12 years eight months.

## STATEMENT OF FACTS[2]

According to the Gilroy police report, on June 11, 2008; at approximately 12:34 a.m., the mother of the victim called the police because her son had been assaulted a few blocks from home. When the police arrived at the S. home, the victim was bleeding from a three- to four-inch laceration at the back of his head behind his right ear, but he appeared coherent. He told police that a white small pickup truck pulled up alongside him while he was walking home. One of the people in the truck asked him if he "banged." The victim, who was wearing a white Red Sox jersey with a red undershirt and a hat with the red letter C on the front, realized that he was being asked which gang he belonged. He told the person he was not a gang member and tried to walk away. The person then told the victim to give him his jersey. Afraid, the victim complied. He was then hit on the back of the head with a wrench by another person and fell to the ground. Someone reached into his pants pocket and took his cell phone. The suspects fled in the truck.

---

[2] This factual summary is based on the facts reflected in the Santa Cruz County probation officer's report dated August 21, 2008, prepared for the September 2, 2008 disposition hearing, and on the Santa Clara County probation officer's report dated July 9, 2008, prepared for the detention hearing.

At this point in the interview, the victim suffered a seizure and was taken to the hospital by ambulance.[3]

Gilroy police reinterviewed the victim on July 2, 2008. He recalled that at least three people exited the truck to confront him. One person held a large butcher knife in his right hand and stood on the victim's right side. An unarmed person stood directly in front of him, shook his hand, and said "That's cool." A third person stood to his left and slightly behind him. The person with the knife pointed it at the victim and demanded his jersey. He removed his jersey and was immediately hit on the back of the head by the person who stood behind him and to his left. In addition to the jersey and the cell phone, the robbers took his MP3 player and baseball cap.

Investigation of the crime scene led to a landscaping business whose owner reported his white pickup and his work tools stolen. Confidential information led to a probation search of H.D.'s home, from which the victim's Red Sox jersey and cell phone were recovered. The police reinterviewed H.D. on July 3, 2008. He admitted that on the night of June 11, he went cruising in a truck with his friends, A. and E., and two unidentified people. A. drove, and called out to the victim, "Do you bang?" H.D., E. and the other two approached the victim on foot. The victim was frightened and H.D. shook his hand and said "that's cool" to calm him down. H.D. took the jersey and, while walking back to the truck, heard the victim call for help. He turned and saw E. hit the victim in the head with a hand tool.

A. and E. were interviewed about a week later. A. admitted driving the truck, but claimed he did not see the victim get hit. E. denied that he hit the victim; he claimed he saw one of the unidentified suspects arm himself with a wrench, and later he saw blood on the wrench, but he did not see who hit the victim. E. confirmed that H.D. stood directly in front of the victim and demanded the property. H.D., A. and E. are members of CML, Clifford Manor Locos, a Norteño street gang operating mainly in Watsonville.

## DISCUSSION

At the conclusion of the contested dispositional hearing, at which defense counsel, the prosecutor and the victim's mother all gave impassioned statements, the court made the following remarks:

---

[3] According to the victim's mother, he suffered a skull fracture, bleeding and swelling of the brain, and seizures. Part of his skull had to be removed.

"THE COURT: I believe based upon all of the events in this case, based upon the choices that you made and the choices that you have at this point, that you have a different choice as of today. But as of today, the appropriate choice that I have and I believe the only choice I have is to commit you to the Department of Juvenile Justice. I'll indicate that the maximum term is 15 years, eight months. I'll indicate—

"[DEFENSE COUNSEL]: Your Honor, I believe it's 12 years, eight months.

"THE COURT: 12 years, eight months.

"[DEFENSE COUNSEL]: And the Court has discretion to lower that.

"THE COURT: I haven't finished. I misspoke, but I haven't finished. . . . [¶] Twelve years, eight months. I'll indicate that at least based upon some discussions, that four years for the principal term is appropriate, the five-year enhancement consecutive, the four, the one year, which is one-third of the 245 consecutive, and the one-third of the five years, for a total of 11 years, eight months. [¶] And the issue is, . . . you did have choices, and you made them. And I have choices and I have made them. And I believe mine are appropriate."

However, the commitment order sent to the Division of Juvenile Justice, and the disposition order signed by the court, indicate a maximum term of confinement of 12 years and eight months. In addition, the probation department memorandum signed by the court indicates that 12 years eight months is the maximum term as well as the appropriate discretionary term under sections 726 and 731.

At a subsequent hearing held on October 1, 2008, defense counsel brought to the court's attention the discrepancy between the 12 year eight month maximum term stated in the probation report of September 4, and the 11 year eight month maximum stated by the court at the disposition hearing. The court replied, "No. No. What I indicated was that it was a 12 year eight month maximum. I indicated that if I had to pick a term, because, I believe, on the case law that was given to me, that I believe 11 years eight months was appropriate, but the maximum was 12 eight."

Quoting from *In re Joseph M.* (2007) 150 Cal.App.4th 889, 897 [58 Cal.Rptr.3d 756], the minor argues this record shows the juvenile court "understood it had 'the discretion to consider the facts and circumstances of the minor's case in setting a period of physical confinement that was less than the maximum adult term but within the sentencing triad described in Penal Code section 1170, subdivision (a)(3),' " and intended to do so. The court's error, according to the minor, was "in deciding how to calculate a maximum term of confinement less than the adult term maximum. An adult being sentenced for a second degree robbery can be ordered to serve two, three or five years in prison (Pen. Code § 213, subd. (a)(2).) Four years is not one of the choices. The juvenile court had to choose one of 'the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code.' (. . . § 726, subd. (c).) [¶] . . . Since the court intended to select the mid-term rather than the upper term in calculating [H.D.]'s maximum term of confinement, the maximum term . . . should be set at ten years and eight months."

The Attorney General agrees with the minor that "a juvenile court has the discretion to impose an actual term of confinement less than the maximum term imposable on an adult . . . ; that the juvenile court here understood it had that discretion . . . ; and that in exercising discretion to impose less than the maximum term, the juvenile court is limited to selecting the lower or middle term statutorily authorized, and may not simple select any term lower than the upper term which is not part of the standard triad . . . ."

The Attorney General correctly notes that there is a potential conflict in the case law on the last point. (See *In re Joseph M., supra,* 150 Cal.App.4th at p. 897; *In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542 [26 Cal.Rptr.3d 551].) The Attorney General further agrees with the minor that the juvenile court "appeared to indicate the appropriate actual physical term should be 11 years 8 months by virtue of a four, not five, year term for the robbery" and further "muddled" the matter with its comments at the October 1, 2008 hearing. The Attorney General suggests that if this court should deem the actual physical term of confinement unclear, it should remand the matter to the juvenile court for clarification, since an 11 year eight month sentence would be "unauthorized" and the juvenile court should have the opportunity to decide whether 10 years eight months would be an appropriate discretionary term.

We agree with the parties that the record before us strongly suggests that the court understood its discretion to set the minor's maximum term of confinement at something less than the maximum term that could be imposed on a similarly situated adult, pursuant to section 731, subdivision (c).[4] We. also agree with the parties that the record is "muddled" in that it also appears the court would have imposed a term of 11 years eight months as the appropriate maximum term, but for its belief that imposition of such a term would be unlawful, as the court was apparently under the impression—as the parties are—that it had no discretion to choose a term other than one of the determinate sentencing law's (DSL's) triadic terms for the offense at issue.

■ We do not agree that the court's discretion to set a term of physical confinement for the minor at less than the maximum imposable term is limited to one of the three terms for a given offense set by Penal Code section 1170. We discern no legislative intent to so restrict the juvenile court's power. In the first place, the juvenile court law is an indeterminate disposition scheme. The juvenile court does not determine the minor's release date or the actual term of confinement. Those functions reside with the Youth Authority Board (now Board of Parole Hearings) created by Senate Bill. No. 459 (2003–2004 Reg. Sess.). (Stats. 2003, ch. 4, §§ 16, 20, amending §§ 1719, 1723.) While the court now decides the outer limits of the ward's indeterminate period of confinement, the administrative board still determines the ward's actual length of stay. In our view, the wholesale importation of the DSL's triadic sentencing scheme into the juvenile court law would be inconsistent with its indeterminate sentencing structure, at least absent some legislative direction.

However, the amendment to section 731, subdivision (c) contains no such direction. The language of the amendment does not even reference the DSL or Penal Code sections 1170, 1170.1, or a triadic sentencing structure. On the contrary, the statute ties the court's exercise of discretion to "the facts and circumstances of the matter or matters which brought or continued the ward

---

[4] Section 731, subdivision (c) provides: "A ward committed to the Division of Juvenile Facilities may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment that could be imposed upon an adult convicted of the offense or offenses that brought or continued the minor under the jurisdiction of the juvenile court. A ward committed to the Division of Juvenile Facilities also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section. This section does not limit the power of the Board of Parole Hearings to retain the ward on parole status for the period permitted by Section 1769."

under the jurisdiction of the juvenile court," strongly suggesting that the court should endeavor to tailor the disposition to the offender and the offense, rather than attempt to shoehorn the punishment into a one-size-fits-all sentencing scheme. (§ 731, subd. (c).) Our view is supported by the extant legislative materials. The report for the Senate Committee on Public Safety dated March 13, 2003, states: "This bill would authorize the court to additionally set maximum terms of physical confinement in the CYA based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court. This new provision would provide for court consideration *of factors about the offense and the offender's history which would be comparable to those employed now for the triad sentencing of adults*, and have those considerations reflected in the CYA confinement term ordered by the court." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Mar. 12, 2003, pp. I–J, italics added.) By providing for court consideration of *"factors"* that inform the court's sentencing choices under the DSL's triadic scheme, rather than consideration of the triadic scheme itself, we think the report supports our view that the court's discretion is not unfettered but rather is circumscribed by the rules of court, and perhaps by the types of materials listed in Penal Code section 1170.1, subdivision (b) (i.e., probation reports, victim impact statements). But we find nothing in the legislative history to suggest that the juvenile court's new discretion was intended to be limited to selection of one of the three terms provided by the Penal Code for a particular offense.

■ Nor do we find that section 726, subdivision (c),[5] compels a different reading of section 731, subdivision (c). We see no conflict between those two sections. Consistent with the equal protection principles it was designed to implement, section 726 sets the outermost limit of a ward's physical confinement at the maximum term of imprisonment that could be imposed on an adult. It defines the maximum term of imprisonment as the upper term calculated pursuant to Penal Code section 1170. It permits the court to increase the overall maximum term of imprisonment by aggregating the

---

[5] Section 726, subdivision (c) provides: "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court.

"As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled.

"If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within

period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions, and it defines "physical confinement" as "placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home . . . or in any institution operated by the Youth Authority." (§ 726, subd. (c).) Nothing in section 731, subdivision (c) affects these provisions. Section 731, subdivision (c) simply adds that the court may set the maximum term of physical confinement in the DJF at less than the overall maximum term of imprisonment set by section 726. The two provisions complement each other.

■ Our reasoning is in accord with the views expressed in *In re Carlos E.* in which the Court of Appeal concluded that section 731, subdivision (c) grants the juvenile court the discretion to choose any appropriate term less than the maximum term imposable on an adult charged with the same offense, based on the facts and circumstances of the matter. That court observed: "There is nothing in the legislation or its history to suggest the Legislature sought to make sweeping changes in the commitment of a minor to [DJF] from an indeterminate term to a determinate term, nor is there any provision that the Legislature is restricting the juvenile court to the adult sentencing triad. Proof the juvenile court's decision is not tied directly to the adult system is found in the language utilized; the juvenile court is to consider the facts and circumstances of the matter, rather than being restricted solely to the aggravating or mitigating circumstance scheme for adults. The juvenile court's determination must be tied to the purposes of the juvenile system, which include the protection of the public as well as the rehabilitation of the minor. (§ 202.) [¶] . . . [¶] Under the changes to section 731, the juvenile court must determine the maximum period of confinement to [DJF] based on the facts and circumstances, this maximum may not be more than that for a comparable adult, but may be less. The maximum period of confinement set by the court is not a determinate term, it is the ceiling on the amount of time that a minor may be confined in [DJF], and recognizes that the committing court has an interest in and particularized knowledge of the minors it commits to [DJF]. The Youth Authority Board retains the power, subject to the applicable rules and regulations, to determine the actual length

Section 602, the 'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code, which includes any additional term imposed pursuant to Section 667, 667.5, 667.6, or 12022.1 of the Penal Code, and Section 11370.2 of the Health and Safety Code.

"If the charged offense is a misdemeanor or a felony not included within the scope of Section 1170 of the Penal Code, the 'maximum term of imprisonment' is the longest term of imprisonment prescribed by law.

" 'Physical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority.

"This section does not limit the power of the court to retain jurisdiction over a minor and to make appropriate orders pursuant to Section 727 for the period permitted by Section 607."

of confinement at or below the ceiling set by the juvenile court and to determine the conditions of the minor's confinement. Thus, the indeterminate nature of the system remains in accordance with the distinct purposes of the juvenile system." (*In re Carlos E., supra*, 127 Cal.App.4th at p. 1542; see also *In re Christian G.* (2007) 153 Cal.App.4th 708, 713–715 [63 Cal.Rptr.3d 215] [rejecting claim of *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] error].)

■ We recognize that the Court of Appeal in *Joseph M.* concluded that "[t]he amendment to section 731, subdivision (b) [now subd. (c)], was intended to afford the juvenile court the discretion to consider the facts and circumstances of the minor's case in setting a period of physical confinement that was less than the maximum adult term but within the sentencing triad described in Penal Code section 1170, subdivision (a)(3)." (*In re Joseph M., supra*, 150 Cal.App.4th at pp. 896–897.) However, the precise holding in *Joseph M.* was that "the discretion to set the maximum confinement time at less than the lengthiest term an adult would serve for the same offense does not allow for the imposition of a term less than the minimum adult term." (*Id.* at p. 896.) This case does not require us to decide whether we agree with the holding of *Joseph M.*, inasmuch as neither party suggests that the juvenile court here ever contemplated imposing a term less than the *minimum* adult term. We hold only that on the record before us, it is unclear whether the juvenile court intended to fix the minor's term of maximum physical confinement at 12 years eight months or something less, and whether the court understood it had the discretion to impose a maximum term other than the lower or middle term set by Penal Code section 213. Therefore, we will reverse the dispositional order and remand the matter to the juvenile court for further proceedings on disposition.

## CONCLUSION

On the present record, this court cannot conclude that the juvenile court intended to and did fix the minor's maximum term of physical confinement at 12 years eight months with the full understanding of the scope of its discretion pursuant to section 731, subdivision (c). Therefore, we will reverse the dispositional order and remand the matter to the juvenile court for further proceedings on disposition.

## DISPOSITION

The dispositional order is reversed. The matter is remanded to the juvenile court with directions to calculate the maximum period of physical confinement based on the facts and circumstances of the matter before it. The court is directed to prepare an amended commitment order reflecting any changes, and to forward a certified copy of the amended commitment order, if any, to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities.

Rushing, P. J., and Duffy, J., concurred.