Filed 4/21/21  In re J.J. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. J.J., Defendant and Appellant. | A159333 (Contra Costa County Super. Ct. No. J15-00575) |

In 2019, when appellant J.J., was almost 17 years old, the juvenile court ordered him committed to the Division of Juvenile Facilities (DJF)[1] for a maximum term of confinement of eight years for several offenses he committed between 2015 and 2019.  J.J.'s appellate counsel initially requested this court independently review the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738, 744 (*Anders*).  (See *In re Kevin S.* (2003) 113 Cal.App.4th 97, 99 [*Wende*

---

[1]  "As of July 1, 2005, the correctional agency formerly known as the Department of the Youth Authority (or California Youth Authority) became known as the 'Department of Corrections and Rehabilitation, Division of Juvenile Facilities.'  ([Welf. & Inst. Code,] § 1710, subd. (a).)"  (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 4, fn. 2.)

1

procedure applies in juvenile delinquency appeals].) J.J.'s counsel also informed J.J. of his right to file a supplemental brief and he did not file one.

Upon our independent *Wende/Anders* review, we found no arguable appellate issues requiring further briefing other than what we referred to in a supplemental briefing order to the parties. We requested further briefing regarding whether the eight-year maximum period of J.J.'s confinement in DJF set by the juvenile court must be reduced based on the retroactive application of recently amended Welfare and Institutions Code section 731[2] under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), and regarding related issues. Both parties submitted supplemental briefs. We conclude the eight-year maximum period set by the court must be reduced based on the retroactive application of amended section 731, vacate that part of the order, and remand the issue for the juvenile court to determine consistent with this opinion. The order is otherwise affirmed.

## BACKGROUND

The original petition in this case was filed under section 602 in Contra Costa County in 2015. The juvenile court sustained allegations, admitted by J.J., that he had committed a carjacking in violation of Penal Code section 215 and felony grand theft in violation of Penal Code section 487.

In 2016, a section 602 petition was filed in Alameda County. The juvenile court in Alameda County sustained the allegation, admitted by J.J., that he had attempted grand theft from a person in violation of Penal Code sections 487 and 664. That case was then transferred to the original section 602 petition proceedings in Contra Costa County.

As a result of these offenses and his subsequent numerous probation

---

[2] Statutory references are to the Welfare and Institutions Code unless otherwise stated.

violations, J.J. was ordered between 2015 and 2019 to be placed in several different settings in and out of his home. These included home supervision, juvenile hall, a boy's ranch, the Orin Allen Youth Rehabilitation Facility and the Youthful Offender Treatment Program (YOTP). In January 2019, the court ordered him placed on home supervision after his successful completion of the YOTP program and in July 2019, the probation department recommended that his wardship be vacated.

However, the Contra Costa District Attorney filed a supplemental section 602 petition in August 2019 alleging that J.J. had recently engaged in a shooting. A contested jurisdiction hearing on this supplemental petition followed.

At the hearing, D.J., then 14 years old, testified that he lived with his parents in a house in Richmond, California. He had an older brother, Johnnie, who did not live with them. Around midnight on July 18, 2019, D.J. heard a knock on the house door. Through a window, he saw J.J., Johnnie's friend, walking towards him, another person on the porch and a third by the garage. J.J. asked for Johnnie, who D.J. said was not there. J.J. said to tell Johnnie that if he did not give J.J.'s "s-h-i-t" back he was "going to be a problem," and walked away with the two others. A minute later, D.J. saw the three walk back to the house. From the sidewalk, J.J. took out a gun and shot five times at the house door. D.J. crawled to his mother's room and had her call the police, who arrived about five or six minutes later.

Two Richmond police also testified. A specialist in crime scene investigation testified that on the night of the shooting she found four expended bullet casings from what appeared to be a semiautomatic weapon in the front yard of D.J.'s house, impact strikes on the house's front door and wall, and bullet projectiles in a house closet and a bedroom. A detective

3

testified that he interviewed J.J. on July 31, 2019, a recording of which was played for the court. It is not in the record, but the prosecutor contended without opposition that J.J. made "some affirmative admissions" relating to the shooting.

The juvenile court found that the People had proven beyond a reasonable doubt their allegation that J.J. had "willfully, maliciously, and unlawfully discharge[d] a firearm at an inhabited dwelling house" in violation of Penal Code section 246.

For the disposition hearing, the probation department reported J.J. "had little to say" about the offense and told the department he got along well with his mother, cared for his little sister and was proud and happy to have graduated from Golden Gate Charter in June 2019. Also, J.J. had told police that Johnnie "betrayed him by attempting to take advantage of him," and that he went to Johnnie's house to confront Johnnie, spoke to Johnnie's little brother, did not know how many shots he fired at the front door and was "reckless." The department further reported, "Since the age of 12, [J.J.] has been involved in violent and dangerous crimes. According to [J.J.], he has . . . become entrenched in the Central Richmond gang, Murda Team. [The] [m]ajority of his crimes have involved a gun and if not, he has used intimidation to inflict fear and compliance of his victims. He has been afforded *every* opportunity to correct his criminal thinking patterns that the Probation Department has to offer, to engage in treatment at both the least restrictive levels and also more recently, in the YOTP, the highest dosage of treatment available by the Department. Yet, [J.J.] once again, engaged in high risk, violent behavior that could have resulted in serious injury or death . . . ." His "institutional commitments and detentions have been riddled with physical altercations, refusing to follow staff directions and gang

4

related writings/raps. His involvement in the altercations, most of them initiated by him, have involved opposing gang members from North Richmond . . . ." Since his 2019 detention, he had been the aggressor in two fights. The department concluded that J.J. posed a high risk of re-offending. It recommended he be committed to DJF for the maximum confinement period, which it calculated to be in excess of 11 years, to ensure public safety and allow him to participate in rehabilitative programing and school.

At the October 2019 disposition hearing, the prosecution pointed out that J.J. would turn 25 years old, and the court would lose jurisdiction over him, before the end of the maximum term of confinement. It argued the court, should it exercise its discretion to reduce the maximum term, set it at not less than eight years to coincide with J.J.'s turning 25.

The court, after considering less restrictive alternatives, agreed that J.J. should be confined to DJF. It determined the maximum confinement period possible was 11 years and 180 days, which consisted of a principal upper term of nine years for the 2015 carjacking, and subordinate terms totaling an additional two and a half years for each of the other offenses, they being the 2015 felony grand theft (eight months), the 2016 attempted grand theft (two months) and the 2019 felony shooting (one year and eight months). The court exercised its statutory discretion to impose a maximum DJF confinement period of only eight years, explaining:

"[I]t addresses the conduct that led us here and is no more than as necessary to achieve rehabilitation. [¶] . . . I'm not going to sentence you to . . . 11 and a half years that are legally available, but I am going to reduce it to 8 years . . . because I want as much supervision of you as possible . . . when you're out of DJJ in two years, to reduce the likelihood that you'll continue on the path that you've been on for the last at least four years that

you've been a ward of the court. [¶] So I'm going to set the maximum term of confinement at 8 years. I do find that that is the period most appropriate to achieve rehabilitation and to balance public safety with [J.J.'s] need for programming and rehabilitative services at DJJ."

After amendment of the abstract of judgment to correct an error, the court ordered that J.J. had credits for time served totaling 1,082 days and that he pay a $200 restitution fine.

J.J. filed a timely notice of appeal.

## DISCUSSION

## I.

### *There Are No Appellate Issues Other Than Regarding J.J's Maximum Term of Confinement in DJF.*

The juvenile court was authorized to commit J.J. to DJF under section 733, subdivision (c), which allows the court to impose such a commitment when the most recent offense is described in section 707. Section 707, subdivision (b)(15) describes the "[d]ischarge of a firearm into an inhabited or occupied building," J.J.'s most recent offense.

"A decision by the juvenile court to commit a minor to [DJF] will not be deemed to constitute an abuse of discretion where the evidence 'demonstrate[s] probable benefit to the minor from commitment to [DJF] and that less restrictive alternatives would be ineffective or inappropriate.' " (*In re Pedro M.* (2000) 81 Cal.App.4th 550, 555-556, disapproved on another ground by *People v. Gonzales* (2013) 56 Cal.4th 353, 375, fn. 6.) "A DJF commitment is not necessarily contrary to a minor's welfare," as it "has many rehabilitative programs that can benefit delinquent wards." (*In re Greg F.* (2012) 55 Cal.4th 393, 417.) Some minors "may be best served by the structured institutional environment and special programs available only at

6

the DJF." (*Ibid.*) In determining the best interests of a minor, the juvenile court " 'must look at the totality of the child's circumstances.' " (*Ibid.*)

Here, the record indicates that over a period of about four years J.J. was given many opportunities in every possible placement short of a commitment to DJF to rehabilitate himself. He failed to rehabilitate, and instead continued to engage in activities that presented a danger to the community. The court considered the totality of J.J.'s circumstances, less restrictive alternatives to DJF, and the rehabilitative programs available to J.J. at DJF before ordering him committed there. The record supports the court's decision, and also does not indicate in any way that the court erred with regard to its time-served credit and restitution orders. We conclude based on our independent review of the record that there are no appellate issues requiring further briefing regarding any matters other than J.J.'s maximum term of confinement in DJF.

## II.

### *J.J.'s Maximum Term of Confinement in DJF Must Be Reduced Under Recently Amended Section 731.*

Although the juvenile court did not err in setting J.J.'s maximum term of DJF confinement at eight years under then-existing law, we sought supplemental briefing to determine whether the Legislature's subsequent amendment of section 731 applies retroactively to J.J. and, therefore, requires reduction of his maximum term of confinement. Both parties argue amended section 731 applies retroactively and, therefore, a reduction is necessary (although they do not agree on whether remand is necessary, as we will discuss). We agree.

Section 731 provides that the juvenile court set a maximum term of confinement for any ward committed to the Division of Juvenile Justice. (§ 731, subd. (c).) In doing so, the court may aggregate terms for prior

7

offenses in the manner set out in Penal Code section 1170.1 for adults.
(§ 726, subd. (d)(3).)  The court must first set a "principal term" and then add any "subordinate terms," which are to be set at one-third of the middle term of imprisonment prescribed for each offense.  (Pen. Code, § 1170.1, subd. (a).)  This procedure was the same at the time of J.J.'s disposition hearing.  (Stats. 2018, ch. 766, § 1.)

There are no appellate issues regarding the juvenile court's determination that the maximum term of confinement for J.J.'s subordinate offenses totaled two years and six months.  At issue are the court's determination that the maximum confinement period legally allowed for the principal offense, J.J.'s commission of carjacking in 2015, was nine years, the upper term for that offense under Penal Code section 215, subdivision (c), and imposition of an aggregate eight-year maximum term of confinement.

At the time of J.J.'s disposition hearing, section 731, subdivision (c) then provided, "The court shall not commit a ward to the Division of Juvenile Justice for a period that exceeds the *maximum* term of imprisonment that could be imposed upon an adult convicted of the same offense" (Stats. 2018, ch. 766, § 1, italics added), although the court could set a lesser period.  (*Ibid.*; *In re H.D.* (2009) 174 Cal.App.4th 768, 778 ["section 731, subdivision (c) grants the juvenile court the discretion to choose any appropriate term less than the maximum term imposable on an adult charged with the same offense, based on the facts and circumstances of the matter"].)  The court designated J.J.'s 2015 carjacking offense as the principal offense.  Penal Code section 215, subdivision (c) provides, "Carjacking is punishable by imprisonment in the state prison for a term of three, five, or nine years."  Thus, the court could set a term of confinement of up to nine years for this offense alone.  Therefore, the aggregate eight-year

8

maximum confinement period in DJF that it set for J.J. was lawful at the time.

However, the Legislature subsequently amended section 731, subdivision (c), effective September 30, 2020, and inoperative on July 1, 2021 (§ 731, subd. (d)), to change the phrase "maximum term of imprisonment" to "middle term of imprisonment" as follows: "The court shall not commit a ward to the Division of Juvenile Justice for a period that exceeds the *middle* term of imprisonment that could be imposed upon an adult convicted of the same offense." (Stats. 2020, ch. 337, § 28, italics added.) Under this amendment, the juvenile court can set a maximum term of confinement for carjacking of only five years, the middle term for that offense. (Pen. Code, § 215, subd. (c).) That plus the two-and-half-years the court set for the subordinate offenses totals a maximum term of confinement of only seven years and six months, less than the eight-year period the court imposed in 2019, before the Legislature's amendment of section 731. The question, then, is whether this amendment applies retroactively to J.J.'s case, since this appeal was pending when the amendment became effective in September 2020. (See *People v. Figueroa* (1993) 20 Cal.App.4th 65, 70 ["Absent a savings clause, a criminal defendant is entitled to the benefit of a change in the law that occurs during the pendency of his or her appeal"].)

In *Estrada*, *supra*, 63 Cal.2d 740, our Supreme Court instructed that when the Legislature amends a statute so as to lessen a punishment, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing a new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply," which includes "acts committed before its passage provided the judgment convicting the defendant of the act is not yet final." (*Id*. at p. 745.) *Estrada*, therefore,

9

established a presumption of retroactivity in such circumstances. (*Ibid*.) We have not found any cases evaluating whether section 731, as recently amended, applies retroactively under *Estrada*. We conclude that it does.

The Legislature amended section 731, subdivision (c) to lessen the maximum period of confinement for a juvenile in DJF. We conclude this was a mitigation of "punishment" subject to *Estrada*. "[P]unishment that is consistent with the rehabilitative objectives" of juvenile court law is an appropriate part of the guidance that a juvenile court may provide. (§ 202, subd. (b).) Further, "punishment" is expressly defined as the imposition of permissible sanctions, which may include "[c]ommitment of the minor to the [DJF]." (*Id.*, subd. (e)(5); see also *In re N.D.* (2008) 167 Cal.App.4th 885, 894 [concluding in an *Estrada* analysis that punishment consistent with the ultimate goal of rehabilitation is or may be one of the purposes of juvenile confinement based on section 202, but holding the amendments before it did not mitigate any punishment].)

Our conclusion is also based on this court's analysis in *In re Aaron N.* (1977) 70 Cal.App.3d 931 (*Aaron N.*). That case involved an earlier amendment to section 731 and other juvenile law statutes. Aaron N. argued that his term of confinement to the then California Youth Authority was unconstitutional because it could result in a period longer than the maximum punishment authorized for an adult for the offenses he committed. (*Aaron N.*, at p. 936.) This court concluded his arguments were moot because of statutory amendments to sections 726 and 731 that became effective after the disposition of his case, which provided that a juvenile "may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense which brought the minor under the jurisdiction of the juvenile court."

10

(*Aaron N.,* at p. 937, and fn. 2.)  The court, applying *Estrada*, held these amendments applied retroactively to Aaron N.'s case because "where, as here, a statute mitigating punishment becomes effective after the commission of the prohibited act but before final judgment, the lesser punishment provided by the new law must be applied in the absence of an express statement to the contrary . . . ."  (*Aaron N.,* at p. 938.)

In short, the amendment to section 731, subdivision (c) lessening the maximum term of confinement for juveniles in DJF from the maximum term of punishment for adults to the middle term of punishment must be retroactively applied to J.J.'s case.  Therefore, we must vacate the juvenile court's setting of his maximum term of confinement at eight years because it is in excess of the aggregate maximum term of confinement allowed for his offenses, which under amended section 731 is seven years and six months. We turn now to whether we should impose this maximum term at seven years and six months, as the People urge, or remand the issue for the juvenile court to determine, as J.J. urges us to do.

## III.

### *We Remand for the Juvenile Court to Determine J.J.'s New Maximum Term of Confinement in DJF.*

J.J. argues that we should remand the issue of his maximum term of DJF confinement to the juvenile court based on *People v. Chavez* (2018) 22 Cal.App.5th 663.  The *Chavez* court concluded that a statute granting courts statutory discretion to strike a firearm enhancement applied retroactively to Chavez's case.  (*Id.* at pp. 710-712.)  The court, rather than affirm the enhancement regardless of the new law based on the trial court's resentencing decisions, remanded the matter for the trial court to determine what to do.  (*Id.* at pp. 712-713.)  As the court pointed out, when laws give trial courts new discretionary authority, appellate courts " ' "have held that

11

the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it has such discretion." ' " (*Id*. at p. 713.)

The People point out that courts do not reverse for further proceedings when to do so would be "a useless and futile act and of no benefit to appellant." (*People v. Seldomridge* (1984) 154 Cal.App.3d 362, 365.) Based on this principle, they argue this court should simply set J.J.'s maximum period of confinement at seven years and six months because it *is* clear the juvenile court would have done so under amended section 731. The People point out that the juvenile court, in setting J.J.'s maximum period of confinement at eight years, said it wanted "as much supervision as possible" for J.J. This was eight years, the minimum amount recommended by the prosecution at the disposition hearing, because, as the prosecution then pointed out, at end of that time J.J. would turn 25 years old and the court's jurisdiction over him as a juvenile would end.

Out of an abundance of caution, we decline to set the maximum period of confinement allowable by law and will remand the issue to the juvenile court for the court to determine. It is not entirely clear what the juvenile court would have done under amended section 731. While the court did indicate it wanted to provide as much supervision to J.J. as possible and set a time that coincided approximately with J.J.'s 25th birthday, it also set the maximum term of confinement at three and a half years less than the maximum then allowed by law, and said it was doing so because this was "the period most appropriate to achieve rehabilitation and to balance public safety with [J.J.'s] need for programming and rehabilitative services at DJJ." It is unclear what the court may have had in mind when it made this statement.

12

Therefore, we will remand to give the court the opportunity to consider any such matters before setting J.J.'s maximum term of confinement in DJF.

## DISPOSITION

The order appealed from is affirmed except that the eight-year maximum term of J.J.'s confinement in DJF set by the juvenile court is vacated and this matter remanded to the court to set a new maximum term of confinement that is consistent with this opinion.

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MILLER, J.

*In re J.J.* (A159333)