Filed 5/19/25  In re J.M. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>J.M.,<br><br>    Defendant and Appellant. | F088156<br><br>(Super. Ct. No. JJD074898)<br><br><br>**ORDER MODIFYING OPINION**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on May 16, 2025, be modified as follows:

1.  On page 2, in the first paragraph, the third sentence is deleted and replaced with:

    We affirm.

Except for the modification set forth, the opinion previously filed remains unchanged.  This modification does not effect a change in the judgment.


                                                              FRANSON, A.P.J.

WE CONCUR:


DE SANTOS, J.


FAIN, J.<sup>†</sup>

_____
<sup>†</sup>    Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>J.M.,<br><br>    Defendant and Appellant. | F088156<br><br>(Super. Ct. No. JJD074898)<br><br><br>**OPINION** |

**THE COURT**[*]

APPEAL from an order of the Superior Court of Tulare County.  Sylvia J. Hanna, Judge.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*]      Before Franson, Acting P. J., DeSantos, J. and Fain, J. [†]

[†]      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Minor J.M. contends on appeal that the juvenile court's disposition order must be reversed and the matter remanded because the court abused its discretion when it placed him in the mid-term program.  The People disagree.   e affirm.

## PROCEDURAL AND FACTUAL SUMMARY

### April 28, 2023 Juvenile Wardship Petition

On April 28, 2023, a juvenile wardship petition was filed in Tulare County Superior Court in case No. JJD074898 pursuant to Welfare & Institutions Code section 602,[1] alleging minor drove or took a car without consent on April 26, 2023 (Veh. Code, § 10851, subd. (a); count 1).

### May 1, 2023 Detention Hearing

On May 1, 2023, the juvenile court held a detention hearing.  Minor denied the allegation.  The court ordered minor to be released from electronic monitoring and placed minor on home supervision.

### May 12, 2023 Detention Hearing

On May 11, 2023, the probation department removed minor from home supervision and detained him because he failed the home supervision program by not attending school, leaving school without permission, and smoking marijuana.

On May 12, 2023, the juvenile court held a detention hearing.  The court removed minor from his home and ordered him detained.

### May 22, 2023 Readiness Conference

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise noted.

On May 22, 2023, the juvenile court held a readiness conference.  The court ordered minor to be released from electronic monitoring and placed minor on home supervision.

The juvenile court stated it was not inclined to release minor on electronic monitoring because, "[h]e absconded from school.  He's reported to be out of control, leaves campus halfway through.  He was asked for his cell phone, didn't comply, smoked, and then when he was placed in handcuffs had some colorful language."

The juvenile court repeatedly emphasized to minor that if he was on electronic monitoring, he was not permitted to be anywhere other than home or school without prior approval from the probation department.  After receiving minor's assurances that he would comply with these terms, the court told minor that it would put him "on the electronic monitor, but I'm not going to mess around with you.  If you violate on the electronic monitor, I'm going to take you back in the facility and we're just going to deal with it that way."

***August 28, 2023 Detention Hearing***

On July 7, 2023, the juvenile court released minor from electronic monitoring and reinstated home supervision.

On August 25, 2023, the probation department again removed minor from his home and detained him.  It was alleged minor ran from law enforcement while they were conducting a burglary investigation and that he was arrested for vandalism (Pen. Code, § 594, subd. (a)(2)) and resisting arrest (Pen. Code, § 148, subd. (a)(1)).

On August 28, 2023, the juvenile court held a detention hearing.  The court denied minor and his mother's requests for minor to be released on electronic monitoring and ordered minor detained.

The juvenile court stated,

> "I'm not inclined to release [minor].  [Minor], honestly, I don't think
> I could be more disappointed.  I don't know if new charges are coming

3.

down the pipeline or not considering the 2:00 a.m. event, but you already were having issues on the 18th on home supervision and your [mother] had indicated that, essentially, you were with her.  She wasn't letting you out of her sight, basically.  And that you were home, even though—or that—even though [the] probation [department] was doing home checks you were out with [mother] and that's the reason why.  But based upon this recent behavior, it's clear to me that you aren't in a position where you can be at home right now— [¶] … [¶]

"—because you cannot comply."

***September 5, 2023 First Amended Petition***

On September 5, 2023, a first amended wardship petition was filed, alleging minor drove or took a car without consent on April 26, 2023 (Veh. Code, § 10851, subd. (a); count 1) and resisted arrest on August 24, 2023 (Pen. Code, § 148, subd. (a)(1); count 2).

***September 7, 2023 Readiness/Plea Hearing***

On September 7, 2023, the juvenile court held a readiness/plea hearing.  Minor admitted the allegations of the first amended petition, contingent on being found eligible for deferred entry of judgment.

Minor read a letter to the juvenile court at the hearing.  He stated that if the court released him on electronic monitoring, he would attend school every day and follow the court's directives.

The juvenile court stated to minor's mother,

"I have some serious concerns about what you've been telling the [c]ourt.  I don't think that [minor] has been compliant and I think you are trying to tell me he's been compliant when I know his actions have shown otherwise repeatedly, both at school and at home, either indicate to me that you are completely and totally unaware of his bad actions or that you are aware of them and that you're being less than candid with me."

The juvenile court told minor's mother that she was required to inform the probation department if minor was doing something he was not supposed to be doing.  Minor's mother agreed.

4.

The probation officer told the juvenile court that minor had been causing disturbances in custody and was on "disciplinary action."

The juvenile court ordered minor to be released on electronic monitoring. It stated it was granting minor an opportunity to show compliance and advised him that if he violated the court's orders, he would serve in a custodial program.

### *September 26, 2023 Probation Report*

On September 26, 2023, the probation department filed a report noting it was "concerned with … minor's lack of school performance as he has a 0.17 grade point average, excessive absences and according to school records, has significant gang involvement in school, as he affiliates with Northerner's." However, the probation report concluded that, "given … minor's lack of prior criminal record, he can benefit from the [d]eferred [e]ntry of [j]udgment [p]rogram, assuming he is able to maintain a connection to his [p]robation [o]fficer, in addition to community-based services."

### *October 4, 2023 Probation "Home Supervision/Electronic Monitoring Compliance Report"*

On October 4, 2023, the probation department filed a "Home Supervision/Electronic Monitoring Compliance Report." It stated that minor and his mother had an appointment to conduct a disposition report interview on September 19, 2023, but minor and his mother failed to appear. It stated minor's mother said she had forgotten the appointment but had rescheduled it for the next day. However, minor's mother missed the rescheduled appointment as well.

The report stated that on September 27, 2023, the department received a call from a law enforcement officer who reported minor had been involved in an incident at a grocery store involving the shoplifting of alcohol. The officer stated minor had been absent from school the past few days and had been suspended the previous week. The report stated the department contacted minor's mother, who stated minor was doing well at home and that she had not encountered any issues with minor. The probation

5.

department stated it reminded minor's mother that the conditions of minor's release included not allowing minor to leave home without receiving permission from the department. Minor's mother said she understood the condition.

The report stated that on October 2, 2023, minor's school reported minor "had been suspended for three days starting on September 22, 2023, due to his behavior, which involved antagonizing fellow students …, and even removing his uniform. [The school] further informed [p]robation that … minor had attended school on the preceding Friday but continued to cause disruptions and did not show up to school on the current date." The department noted that based on his actions, minor had failed to adhere to the terms of the electronic monitoring program.

### *October 5, 2023 Deferred Entry of Judgment and Noncompliance Review Hearing*

On October 5, 2023, the juvenile court held a deferred entry of judgment and noncompliance review hearing. The court found that minor's compliance with the terms of electronic monitoring was "not good." It terminated minor's electronic monitoring and ordered him detained.

Minor's mother asked the juvenile court why minor did not get to continue with electronic monitoring, stating to the court that "he's been staying home and being good." The court responded that the information in the October 4, 2023 probation report stating minor's conduct, included shoplifting alcohol from a grocery store, not attending school regularly, and traveling outside the home without permission from the probation department, showed he had not been in compliance with electronic monitoring. The court found minor was not suitable for deferred entry of judgment and set the matter for a dispositional hearing.

### *October 13, 2023 Probation Report*

On October 13, 2023, the probation department issued a dispositional report noting minor was failing five classes and earning a "D" in another class. The report also

noted minor had received two "consequences" and one "incident report" while in custody. One of the incidents involved minor throwing a "kite" outside of his cell door, one involved minor assaulting another youth, and one involved minor attempting to mail an inappropriate letter.

The report also stated "[p]robation is concerned with … minor's marijuana use, poor school performance, issues with attendance, and lack of parental guidance in the home. Further, during the interview the minor failed to show remorse for his actions, as well as for the victim." It stated minor "requires an intensive level of supervision, which can be provided through [w]ardship and a grant of formal probation" while minor resided in his mother's home. It recommended the juvenile court commit minor to "the standard terms and conditions of probation, as well as those specific to [minor's] needs, including he: abide by an 8:00 [p.m.] curfew[;] attend school as required; refrain from the use of all illegal substances; participate in drug and alcohol counseling, be subject to search and test clauses; complete [80] hours of community service[;] and pay a restitution fine."[2]

### *October 19, 2023 Dispositional Hearing*

On October 19, 2023, the juvenile court held a dispositional hearing. The court indicated it was not inclined to follow the probation department's recommendation and felt that minor belonged in either the short-term or mid-term program.

Minor's mother stated minor was remorseful and would follow the juvenile court's orders if he was again placed on electronic monitoring again. The court then stated minor and his mother had previously made the promise to comply with the terms of home supervision and electronic monitoring multiple times but repeatedly failed to do so, and noted it previously agreed to minor's requests to stay out of custody against its own best judgment.

---

[2] Minor's school's counseling report, intervention log, attendance log, and discipline report were attached to the probation department's report.

The juvenile court stated,

"[O]n July 7th I ordered you to come back on August 18, and I kept you on home supervision. You were not in compliance then either. You weren't home. [The] [p]robation [department] was going to check on you and [mother] said, 'Well, you know there were issues.' I can't remember, honestly, the 5,000 different things that [mother] has been telling me about why you can't be in compliance. … And the rules are very clear as to what you needed to do. And the burden is on you to be in compliance…. And [mother] came to your defense every time we were in court and you weren't in compliance. And I said, 'Okay. Let's go ahead and hold on to home supervision and show me full compliance.' And I ordered you back on September 21st and you couldn't even make it that long, because [10] days later you're before this court again on a detention because you violated home supervision. You had a vape pen. You were arrested on new charges. You were out at 2:00 o'clock in the morning, and [mother], again, had reasons why or thoughts why. But, again, this is on you, [minor], and you knew what you had to do and you chose not to do it."

The juvenile court noted that it had a zero tolerance policy and yet had released minor on home supervision or electronic monitoring five or six times and stated that "it defies logic that we keep trying the same thing over and over again[.]" After detailing more of minor's poor school behavior, the court stated that a secure detention placement was in minor's best interest, and stated it was undecided whether to place him in the short-term or mid-term program. The court denied minor's request to be placed on electronic monitoring and declared minor a ward in the custody of the probation department, committed minor to the 180-day short-term program, and determined that physical custody of minor should be removed from minor's mother, stating she "failed or neglected to provide, or is incapable of providing, proper maintenance, training, and education for [minor]." The court informed minor that he could be released from the short-term program in 90 days if he performed well.

8.

***April 4, 2024 Probation Report***

The April 4, 2024 probation report noted minor completed the residential portion of the short-term program on January 30, 2024,[3] and started school on February 21, 2024. The report stated the probation department attempted to contact minor at school the following day, February 22, 2024, but he was not there. It stated that on March 13, 2024, the school reported that minor had missed a few days of school due to illness. The probation department contacted minor that day and he admitted to smoking marijuana and tested positive for marijuana use. The report noted that on April 4, 2024, the truancy officer at the school reported that minor and his mother failed to appear at a meeting to discuss minor's attendance, which had been scheduled to discuss minor's seven absences since enrolling in school on February 21, 2024.

***April 23, 2024 Probation Report***

On April 23, 2024, the probation department issued a detention report which stated minor was being detained for violating a juvenile court order. Specifically, the report noted that minor had violated the terms and conditions by committing attempted car theft, conspiracy, resisting arrest, using marijuana, and failing to attend school regularly. The report noted that minor's attendance at school, academic performance, and behavior at school were all "poor[,]" and that minor's friends were "gang involved[.]" It also stated minor denied having any gang tattoos, despite minor refusing the show the probation officer his hands. The report stated that "services to prevent/eliminate removal" and "services to facilitate return home" both included the short-term and mid-term programs.[4]

---

[3]   Minor was released from custody in the short-term program 99 days after he was ordered to participate in the 180-day short-term program.

[4]   The probation report did not recommend the long-term program.

*April 23, 2024 Probation Violation Notice*

On April 23, 2024, the probation department applied to revoke minor's probation, alleging that minor was in violation of his probation for failing to obey all laws by being arrested for burglary, resisting arrest, attempted car theft, conspiracy, using marijuana, and failing to attend school regularly. The department requested that minor be detained pending the outcome of the proceedings.

The report stated that over the weekend of April 6 and April 7, 2024, minor's mother left multiple voicemail messages for the probation department saying that minor had taken her car without permission and failed to return home. She said that she had texted minor, and minor said he would return her car within a few hours but did not do so. She said she was late for work and asked the probation department to contact her or do something about the situation. When contact was made with minor's mother on Monday, April 8, 2024, she alleged that her voicemails were left due to a misunderstanding and that minor's father, not minor, had taken her car. Minor's mother was questioned about whether "there was anything she was not being transparent with in regards to the reported incident and she [said] no."

It stated that later that evening, minor was arrested for burglary (Pen. Code, § 459), resisting arrest (Pen. Code, § 148, subd. (a)), attempted burglary (Pen. Code, §§ 664, 459), attempted car theft (Pen. Code, § 664; Veh. Code, § 10851), and conspiracy (Pen. Code, § 182, subd. (a)(1)) and booked into juvenile hall.

On April 9, 2024, minor was released from custody to his grandmother after the Tulare County District Attorney declined to file charges relating to his April 8, 2024 arrest.

The report stated that on April 11, 2024, the probation department attempted to contact minor at his school, but the school reported that minor had not reported to school

10.

since his release from custody on April 9, 2024.  The school reported that minor had 12 unexcused absences since his return on February 21, 2024.   t stated that on April 17, 2024, minor's school called the probation department and reported that minor had 12 absences since his enrollment.  The school stated three attendance contract meetings with minor and his mother had been scheduled but minor and his mother failed to show up for any of the meetings.

On April 23, 2024, the probation department contacted minor at his school.  Minor's teacher reported the minor was inside the student support room, not his classroom, because he had refused the school's directives to comply with its dress policy.  School records showed that minor missed 12 days of school since his enrollment, had reported tardy to class 18 times, and that in 13 of those instances he was in excess of 30 or more minutes late.  School staff also said that minor had reported to class in excess of one hour late on multiple occasions.  The probation department then took minor into custody for violating the terms of his probation.

On April 24, 2024, a probation violation notice was filed.

### *April 25, 2024 Violation of Probation Hearing*

On April 25, 2024, the juvenile court held a violation of probation hearing.  Minor and his mother both requested minor be released on electronic monitoring.  Minor's mother stated to the court that minor was making progress and improving.  The court found that minor's continuance on electronic monitoring was not in his best interest.  It temporarily placed minor in the care of the probation department, denied minor and his mother's requests to release him on electronic monitoring and ordered minor detained in a secure facility.

### *May 1, 2024 Detention Hearing*

On May 1, 2024, the juvenile court held a detention hearing.  Minor admitted he violated his probation.  The probation department and the prosecution requested minor be detained.  Minor and his mother asked for minor to be released on electronic monitoring.

The court addressed minor's mother about minor's noncompliance issues and its concerns about her not holding minor accountable for his noncompliance.

The juvenile court then listed minor's history of failures to comply with electronic monitoring and home release and noted that over the last year minor had not shown a single, sustained period of compliance.  The court stated, however, that it was going to give minor another chance on electronic monitoring but told him that if he failed to comply with the terms of that program it was going to place him in the mid-term or long-term program.

The juvenile court then released minor from custody and placed him on electronic monitoring.

### *May 23, 2024 Probation Report*

On May 23, 2024, the probation department filed its dispositional report.  It stated that while it was initially inclined to commit minor to a mid-term program, it was willing to extend minor another opportunity to complete the aftercare portion of the short-term program.

### *May 29, 2024 Probation Report*

On May 29, 2024, the probation department issued a "Home Supervision/Electronic Monitoring Compliance Report."

The report stated that a review of the electronic monitoring system showed that on May 6, 2024, minor was traveling through his town from 11:00 p.m. to 5:30 a.m., the following morning.

The report stated minor's mother was contacted on May 15, 2024, and she reported minor had not attended school that day because "he was not feeling good."  She was asked about minor "being observed going across the street from their residence to [another apartment complex] daily."  She stated she was not aware that minor was doing that.  She stated she would talk to minor about remaining in their home.

12.

The report stated the department then spoke to minor and admonished him for leaving home without permission. It reminded minor of his electronic monitoring contract and that the judge said she would place him in the mid-term program if he did not comply with the contract. The report noted that on May 22, 2024, the monitoring system showed minor was again at the other apartment complex and then traveled to an address in another town from 12:00 p.m. until 1:30 p.m. It stated minor "did not have permission to … travel to [the other town] and there were no missed calls or voicemails from the minor requesting permission." On May 23, 2024, minor "was admonished for leaving his residence without permission once again. [M]inor was reminded he had court coming up and was encouraged to remain compliant until his court date. [M]inor was reminded of the consequence of failing to comply with his contract. [M]inor expressed his concerns about being placed in the [m]id-[t]erm program and … minor was reminded it was up to him on his compliance."

The report stated that, nevertheless, on May 28, 2024, the system showed minor "had continued to go to multiple locations throughout [his town]. The minor also continued to stay out past midnight across the street from his residence at [another apartment complex]. As of [May 28, 2024], the minor has not called for permission to leave his residence."

### *May 30, 2024 Review Hearing*

On May 30, 2024, the juvenile court held a review hearing. It found minor in violation of the terms and conditions of the electronic monitoring program and committed him to the mid-term program for one year. Minor and his mother asked for another opportunity to be placed on electronic monitoring and made excuses for minor's lack of compliance with electronic monitoring. After hearing from minor and his mother, the court ordered minor into an out-of-home placement and committed him to the mid-term program for one year. The court stated that it read and considered the social study report prepared by the probation department and all other relevant evidence.

Speaking to minor's mother, the juvenile court stated,

"I have told you this a number of times what the rules are. I have also told you—and ma'am, I'm looking at you because over and over and over again, you've made statements to the [c]ourt in an attempt to alleviate the issues of [noncompliance] over and over and over again that were less than truthful and quite frankly in an effort to enable [minor's behavior]. I have stated over and over and over again that if you could not parent that you would leave this [c]ourt no choice but to remove him from your home because of the circumstances of supervision and because the circumstances where you come before this [c]ourt and repeatedly indicated reasons why he wasn't in compliance with home supervision.

"Over and over again, based upon your statements, I have afforded more and more opportunities for [minor] to remain in the home, hoping that both of you at some point would understand, especially after he was placed in the short[-]term program, would understand what was required of you and what was needed of you. I need you to obey all laws. I need you to go to school. And need you to stop going out in the middle of the night."

The juvenile court continued:

"[A]t this time [home supervision and electronic monitoring] hasn't worked. So I'm done with the issue of trying the same thing over and over and over again hoping for a different result. It seems to this [c]ourt that that hasn't worked. And so the only thing that I can think at this time is to do what I said I was going to do at the last court date and the court date before that, which is to move forward. Okay?

"So let's try this. And hopefully based upon your behavior in the detention facility, you will have the opportunity, sir, to show that you can reach full compliance and then be placed once again into the aftercare [program]. [¶] … [¶]

"You're ordered into the mid[-]term program for however long it takes to complete the mid[-]term program. [¶] … [¶]

"We've already tried the short[-]term [program]. [¶] … [¶]

"And [minor] violated repeatedly while on aftercare in the short[-]term program."

Minor's mother stated, "He never got the aftercare program."

The juvenile court responded,

14.

"Because he can't stay in compliance with the monitor in the aftercare program, which is where the violation of probation was generated very quickly after his [noncompliance] on the monitor.

"So with that in mind, the welfare of [minor] requires physical custody be removed from the parent.

"[Minor]'s parent has failed or neglected to provide or is incapable of providing proper maintenance, training, and education for [minor].

"[Minor] has been on probation in the custody of the parent and has failed to reform.

"Continuance in the home is contrary to [minor]'s welfare.

"[The] [p]robation [department] is granted the authority to authorize medical, surgical, dental or remedial care under [section] 739.

"Reasonable efforts have been made to attempt to prevent the need for removal.

"[Minor] is committed to the mid[-]term program for one year or until the requirements of the program have been satisfactorily completed."

On June 7, 2024, minor filed a timely notice of appeal.

## DISCUSSION

Minor contends the juvenile court abused its discretion when it committed him to the mid-term program. The People disagree. We agree with the People.

### A. *Law*

Section 202 provides:

"Minors under the jurisdiction of the juvenile court … as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." (§ 202, subd. (b).)

In deciding a minor's placement, " 'the juvenile court [has] maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' " (*In re*

*James R.* (2007) 153 Cal.App.4th 413, 432; *In re Carlos J.* (2018) 22 Cal.App.5th 1, 7.) Dispositional orders must conform with the purposes of juvenile delinquency laws, which are "twofold: (1) to serve the 'best interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law-abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public ….'" (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614.) To accomplish these purposes, the juvenile court "has statutory authority to order delinquent wards to receive 'care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances.'" (*Id*. at p. 615, see § 202, subds. (a), (b), & (d).)

When determining the appropriate disposition in a delinquency proceeding, the juvenile courts are required to consider "(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.) It must "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

Section 726, subdivision (a)(2) permits the juvenile court to limit the control to be exercised over a minor adjudged a ward of the court by any parent or guardian by removing the minor from the physical custody of the parent or guardian where "the minor has been tried on probation while in custody and has failed to reform." (§ 726, subd. (a)(2).)

A disposition hearing record should reflect evidence that the proposed means of rehabilitation will result in probable benefit to the minor, and that the goals of the juvenile law could not have been met by a less restrictive placement. (*In re Michael D.* (1987) 188 Cal.App.3d 1392; *In re Miguel C.* (2021) 69 Cal.App.5th 899, 906.) "After finding that a minor is a [ward of the court], the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the

social study of the minor made by the probation officer and any other relevant and material evidence that may be offered, including any written or oral statement offered by the victim[.] … In any judgment and order of disposition, the court shall state that the social study made by the probation officer has been read and that the social study … and any statement has been considered by the court." (§ 706.)

The standard of review in juvenile commitment decisions is abuse of discretion. (*In re Joey G.* (2012) 206 Cal.App.4th 343, 346.) A juvenile court abuses its discretion when it acts " 'in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125, abrogation on other grounds recognized in *People v. Leon* (2020) 8 Cal.5th 831, 848.) Reviewing courts " 'must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them.' " (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.) Unless the record is entirely devoid of evidence to support the court's factual findings, the decision to commit a minor should not be disturbed. (*Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.)

" 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) " ' "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." ' " (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 756.) In reviewing a commitment determination, we remember that " 'the primary goal behind maintaining separate courts and procedures for adults and minors is to ensure that juvenile offenders who have not yet become hardened criminals receive treatment and rehabilitation.' " (*In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542.) That goal is reflected in the mandate that courts consider "the protection of the public as well as the rehabilitation of the minor" in reaching a disposition. (*Ibid.*) Accordingly, "when we assess the record in light of the purposes of the [j]uvenile [c]ourt

[l]aw [citation], we evaluate the exercise of discretion with punishment and public safety and protection in mind." (*In re Lorenza M.*, *supra*, 212 Cal.App.3d at p. 58.)

### B. Analysis

Here, there is sufficient evidence to support the juvenile court's commitment of minor to the mid-term program. The record supports the court's reasonable inference that the mid-term program will result in probable benefit to the minor, and that the goals of the juvenile law could not have been met by a less restrictive placement. (See *In re Michael D.*, *supra*, 188 Cal.App.3d 1392.)

Here, the juvenile court stated, in pertinent part:

> "The [c]ourt has read and considered the social study report prepared by [the] probation [department] and all other relevant evidence."

It continued:

> "[A]t this time [home supervision and electronic monitoring] hasn't worked. So I'm done with the issue of trying the same thing over and over and over again hoping for a different result. It seems to this [c]ourt that that hasn't worked. And so the only thing that I can think at this time is to do what I said I was going to do at the last court date and the court date before that, which is to move forward [with placing minor in the mid-term program]. Okay?
>
> "So let's try this. And hopefully based upon your behavior in the detention facility, you will have the opportunity, sir, to show that you can reach full compliance and then be placed once again into the aftercare [program]. [¶] … [¶]
>
> "You're ordered into the mid[-]term program for however long it takes to complete the mid[-]term program. [¶] … [¶]
>
> "We've already tried the short[-]term [program]. [¶] … [¶]
>
> "And he violated repeatedly while on aftercare in the short[-]term program."

The juvenile court stated it read and considered the probation report, which recommended minor be committed to the mid-term program because of minor's repeated failure to comply with the terms and conditions of home supervision and electronic monitoring and minor's mother's inability to ensure minor was following the terms and conditions of home supervision and electronic monitoring. The report stated minor repeatedly failed to comply with the terms of electronic monitoring and home supervision, even after already being placed in the short-term program, when he was again placed on home supervision and electronic monitoring, as he repeatedly left his home during the night and other times without getting permission from his probation officer, failed to attend school, and committed new offenses. It further noted his mother repeatedly made excuses for his noncompliance. Accordingly, the report stated, the electronic monitoring system showed minor "had continued to go to multiple locations throughout [his town]. The minor also continued to stay out past midnight across the street from his residence at [another apartment complex]. As of [May 28, 2024], the minor has not called for permission to leave his residence." It stated minor "was admonished for leaving his residence without permission once again. [Minor] was reminded he had court coming up and was encouraged to remain compliant until his court date. [Minor] was reminded of the consequence of failing to comply with his contract. [Minor] expressed his concerns about being placed in the [m]id-[t]erm program and [minor] was reminded it was up to him on his compliance."

The record shows the juvenile court heard evidence on the question of the proper disposition to be made of minor and received in evidence the social study of minor made by the probation department and other relevant and material evidence and read and considered the probation report, as required by section 706. The record also shows that the court considered minor's age, previous delinquent history, and the circumstances and gravity of his offenses when it committed him to the mid-term program, as required by section 725.5. The disposition hearing record also reflects evidence that minor's

19.

commitment to the mid-term program will result in a probable benefit to minor, as the goals of rehabilitation of minor and protection of the public were not met by less restrictive placements in either electronic monitoring or the short-term program. Pursuant to sections 706 and 725.5, and in light of the dual purposes of juvenile law to protect the public and rehabilitate minor, the court's decision to place minor in the mid-term program was not arbitrary or capricious, and is supported by sufficient evidence. Accordingly, we conclude the court did not err when it committed minor to the mid-term program.

## DISPOSITION

The disposition order is affirmed.